NATIONAL ASSOCIATION OF INDEPENDENT INSURERS et al., Petitioners,

v.

TEXAS DEPARTMENT OF INSURANCE et al., Respondents.

No. 95–0120.

Supreme Court of Texas.

Argued Dec. 12, 1995.

Decided July 12, 1996.

Dudley D. McCalla, Fred B. Werkenthin, Austin, for Petitioners.

Stephen F. Morris, John M. Hohengarten, Lanetta M. Cooper, Rod Bordelon, Jr., Dan Morales, Diane Barlow–Sparkman, Austin, for Respondents.

CORNYN, Justice, delivered the opinion of the Court, in which HECHT, ENOCH, OWEN, BAKER and ABBOTT, Justices, join.

This appeal by several insurance companies and insurance trade associations (the Insurers) challenges the validity of two administrative rules adopted by the State Board of Insurance (the Board), under the authority conferred on it by Texas Insurance Code article 21.21, section 13(a).[1] The first rule, Rule 1000, prohibits insurance companies from refusing to sell certain types of insurance to prospective purchasers because they have had an insurance policy canceled by another insurer, or because they have been insured by a county mutual or surplus lines insurance company.[2] The second rule, Rule 1003, prohibits insurers from conditioning the sale of automobile insurance on the purchase of another policy or denying an application because the applicant owns only one car.[3] The violation of these rules consti-

---

**1.** The Legislature has since transferred the power to adopt such rules to the Commissioner of Insurance. Act of May 30, 1993, 73rd Leg., R.S., ch. 685, § 1.03, 1993 Tex.Gen.Laws 2559, 2561 (current version at Tex.Ins.Code art.1. 03A).

**2.** Rule 1000 states:

(a) The fact that another insurer canceled, non-renewed, or refused to insure an applicant shall not be a reason, in whole or in part, for an insurer or agent writing or offering personal automobile, residential property, life, accident or health insurance to refuse to insure or submit an application or binder or conditional receipt for that applicant. An insurer may base its decision whether to insure an applicant on the same factor on which another insurer made its adverse decision if that insurer would have based its decision on that factor without knowledge of the previous insurer's actions.

(b) The fact that an applicant was previously insured by a county mutual or surplus lines insurer shall not be a reason, in whole or in part, for an insurer or agent writing or offering personal automobile or residential property insurance to refuse to insure or submit an application or binder or conditional receipt for that applicant.

(c) The failure to comply with this rule shall constitute unfair competition and unfair practices under the Insurance Code, Article 21.21, and shall be subject to the provisions thereof. This rule does not prohibit an insurer or agent from asking if another insurer canceled, non-renewed or refused to insure the applicant. 28 Tex.Admin.Code § 21.1000.

**3.** Rule 1003 states:

An insurer or agent shall not condition the issuance, renewal, price, continuation, or amount of coverage of personal automobile insurance on the number of vehicles to be insured on the policy or on the purchase from the insurer or any affiliated insurer of any other policy or policies. This rule does not preclude the application of a type of discount

tutes an unfair trade practice, 28 Tex.Admin.Code § 21.1000(c), and subjects an insurer to sanctions. Tex.Ins.Code art. 21.21, § 7.[4]

The Insurers challenge these rules on a variety of grounds permitted by article 21.21, § 13(f).[5] They argue, among other things, that these rules were not adopted in substantial compliance with procedural requirements for agency rulemaking contained in the Administrative Procedure Act (APA), Tex.Gov't Code §§ 2001.001–.902, and are therefore invalid. The trial court held that the rules were valid, and the court of appeals affirmed. 888 S.W.2d 198. We agree with the Insurers, and therefore reverse the judgment of the court of appeals.

■ The Legislature has directed that when an administrative agency adopts a rule, it must at the same time state a reasoned justification for the rule. *See* Tex.Gov't Code § 2001.033. That is, the agency must explain how and why it reached the conclusions it did. The agency's order must present its justification "in a relatively clear, precise, and logical fashion." *Railroad Comm'n v. Arco Oil & Gas Co.*, 876 S.W.2d 473, 492 (Tex.App.—Austin 1994, writ denied). In addition to a reasoned justification, the order adopting the rule must include (1) a summary of the comments the agency received from interested parties; (2) a restatement of the factual basis for the rule; and (3) the reasons why the agency disagrees with the comments. Tex.Gov't Code § 2001.033; *Arco*, 876 S.W.2d at 491. Thus, section 2001.033 places an affirmative duty on an agency to summarize the evidence it considered, state a justification for its decision based on the evidence before it, and demonstrate that its justification is reasoned. Beal, *Challenging the Factual Basis and Rationality of a Rule Under APTRA*, 45 Baylor L.Rev. 1, 11–12 (1993) (hereinafter Beal).

■ If an order does not substantially comply with these requirements, the rule is invalid. Tex.Gov't Code § 2001.035(a). An agency's order substantially complies with the reasoned justification requirement if it (1) accomplishes the legislative objectives underlying the requirement and (2) comes fairly within the character and scope of each of the statute's requirements in specific and unambiguous terms. *Arco*, 876 S.W.2d at 491; *Methodist Hosps. v. Texas Indus. Accident Bd.*, 798 S.W.2d 651, 654 (Tex.App.—Austin 1990, writ dism'd w.o.j.).

Provisions like section 2001.033 are designed to compel an administrative agency to articulate its reasoning and, in the process, more thoroughly analyze its rules. *See* 1 Koch, Administrative Law and Practice § 4.88 (1985); Bonfield, *The Iowa Administrative Procedure Act*, 60 Iowa L.Rev. 731, 857 (1975) (discussing the agency disclosure requirements in the 1961 Revised Model State Administrative Procedure Act). Requiring an agency to demonstrate a rational connection between the facts before it and the agency's rules promotes public accountability and facilitates judicial review. It also fosters public participation in the rulemaking process, *see* Tex.Gov't Code § 2001.001, and allows interested parties to better formulate "specific, concrete challenges" to a rule. Beal at 22. *See also* 1 Koch, Administrative

---

as provided in a rate manual approved by the Texas Department of Insurance or the conditioning of the sale of any umbrella or excess coverage policy on the purchase of an underlying policy.
28 Tex.Admin.Code § 21.1003.

4. At the time these rules were promulgated, a violation also subjected an insurer to a private cause of action for damages. *See* Tex.Ins.Code art. 21.21, § 16 (Vernon 1981); *see also Allstate Ins. Co. v. Watson*, 876 S.W.2d 145, 147 (Tex. 1994). This portion of the statute has been repealed. *See* Act of June 8, 1995, 74th Leg., R.S., ch. 414, § 13, 1995 Tex.Gen.Laws 2988, 3000 (codified at Tex.Ins.Code art. 21.21, § 16(a)).

5. A rule may be invalidated only if it:

(1) violates a constitutional or state statutory provision;
(2) exceeds the statutory authority of the Board;
(3) is arbitrary or capricious or characterized by abuse of discretion or unwarranted exercise of discretion;
(4) is so vague that it does not establish sufficiently definite standards with which conduct can be conformed;
(5) is made on unlawful procedure; or
(6) is clearly erroneous in view of the reliable, probative, and substantial evidence in the whole record as submitted.
Tex.Ins.Code art. 21.21, § 13(f).

LAW AND PRACTICE § 4.88[1] (1995 Supp.); Schenkkan, *When and How Should Texas Courts Review Agency Rules?*, 47 BAYLOR L.REV. 989, (1995) (hereinafter Schenkkan).

Judicial review of administrative rulemaking is especially important because, although the executive and legislative branches may serve as political checks on the consequences of administrative rulemaking, the judiciary is assigned the task of policing the *process* of rulemaking. *See* Schenkkan at 1113. Given the vast power allocated to governmental agencies in the modern administrative state, and the broad discretion ordinarily afforded those agencies, judicial oversight of the rulemaking process represents an important check on government power that might otherwise exist without meaningful limits.

■ We now turn to the Board's orders for the two rules at issue. In adopting Rule 1000, the Board offered the following as a justification:

> Insurers should, on an independent basis, determine whether to insure an applicant in accordance with their individual underwriting guidelines. The fact that another insurer has declined to write, canceled or nonrenewed a policy for an applicant, should not in whole or in part be the basis for an insurer declining to write the applicant. Such action is anti-competitive and results in the blacklisting of some consumers from the insurance market. This section will ensure that the possibility of unfair competition and unfair practices do not occur in the marketplace, and when it does, that there are appropriate remedies for the consumer.

18 Tex.Reg. 6329, 6330 (1993). The Board also stated that the rule "will result in greater fairness ..., increased competition, and better informed consumers." *Id.*

As we have emphasized, the order must explain the agency's reasoning in adopting the rule. The Board fails to explain anywhere in the order, why consideration of a previous denial, along with other permissible factors, is unfair or anti-competitive. It merely concludes that consideration of a previous denial, "in whole or in part," will lead to "blacklisting." The Board states that an insurer should rely on its own underwriting criteria in determining whether to insure an applicant, but has not explained why an insurer's consideration of a previous denial of insurance, as one of perhaps several factors, is unacceptable.

Without an explanation by the Board of its reasoning, we cannot know, and just as importantly, the public cannot know, why the Board reached the conclusions that it did. For example, it is not apparent whether the Board believes or has evidence that a previous denial of insurance has so little correlation with the risk of insurability that consideration of this factor, even as part of the insurer's decisionmaking process, is patently unfair. Or, perhaps, the Board believes that insurers will place greater weight on a previous denial than other factors, and that consideration of the previous denial, even in part, unfairly prevents some applicants from obtaining insurance. In any event, the Legislature has mandated that the reasoning an agency actually relied on appear in the order. If courts allow agencies to adopt conclusory rules such as Rule 1000, the purposes of section 2001.033—to provide meaningful public participation in the rulemaking procedure, to allow opponents of the rule to formulate specific challenges, and to ensure that the agency carefully considers and analyzes a rule *before adopting it*—will be eviscerated. We conclude therefore that the rule is invalid. *See* TEX.GOV'T CODE § 2001.035(a).

■ The Board's order adopting Rule 1003 is similarly deficient. In that order, the Board offers as a justification that:

> Section 21.1003 will result in eliminating any practice of determining the company, coverage or price of personal automobile insurance on the basis of the number of vehicles to be insured on the policy. In addition, this section will also eliminate the practice of tying the sale of a personal automobile insurance policy to another policy, except in specific instances that such tie-in is allowed by the rule. This will result in greater fairness in the personal automobile insurance marketplace and greater availability and affordability of personal automobile insurance.

18 Tex.Reg. 6334, 6334 (1993). We hold that the Board has failed to explain why the prohibited practices are unfairly discriminatory or what effect these rules will have on consumers and the insurance market. The order makes no effort to explain why the "tying-in" of automobile coverage to an umbrella or excess coverage policy is acceptable, while linking coverage to other types of policies is an unfair practice. The order also fails to explain why conditioning the price of insurance on the number of vehicles to be insured should be prohibited, while giving a discount "as provided in a rate manual approved by the Texas Department of Insurance" is permissible. Nothing in the order sheds any light on the agency's rationale. Rather, the Board merely concludes that eliminating such practices will lead to "greater availability and affordability." Such conclusory statements, without an explanation of the agency's rationale, do not satisfy the reasoned justification requirement of the APA.

We do not suggest that the Board cannot provide reasoned justifications for both Rules 1000 and 1003. We merely hold that it has not yet done so. Because the Board has failed to meet the procedural requirements of section 2001.033 for Rules 1000 and 1003, we reverse the judgment of the court of appeals and render judgment that the Rules are invalid.

SPECTOR, Justice, joined by PHILLIPS, Chief Justice and GONZALES, Justice, concurring in part and dissenting in part.

I concur in the Court's judgment that the Board of Insurance failed to state a reasoned justification for Rule 1003 (28 Tex.Admin.Code § 21.1003). I respectfully dissent, however, from the Court's judgment invalidating Rule 1000 (28 Tex.Admin.Code § 21.1000).

The insurers challenged the rules under section 2001.035 of the Administrative Procedure Act (APA). Under that statute, a rule is not valid unless the agency's order is in substantial compliance with section 2001.033 of the APA, which requires that an order adopting a rule set forth a reasoned justification. *See* Tex.Gov't Code § 2001.035. I believe that the majority opinion requires more than substantial compliance by invalidating Rule 1000 based on a single phrase—"in part."

The Board's order adopting Rule 1000 stated that the prohibited actions are "anticompetitive and result[ ] in blacklisting of some consumers from the insurance market." 18 Tex.Reg. 6329, 6330. It further provided that the rule would "result in greater fairness ..., increased competition, and better informed consumers," while allowing insurers to base decisions on the same factors underlying another insurer's adverse decision. *Id.* The order also noted that "[a]n underwriter's function is to underwrite risk based on an individual company's underwriting guidelines" and that the rule was intended to ensure the "fair and equitable application of existing guidelines." 18 Tex.Reg. at 6330, 6331.

From its use of the term "blacklisting" in conjunction with references to the "equitable application of existing guidelines," the Board's reasoning is readily apparent. An insurer should not be free to reject out of hand an applicant who meets the company's own risk-based underwriting guidelines simply because another insurer previously rejected the applicant or cancelled the applicant's coverage. The order repeatedly made clear that an insurer is *not* required to act without knowledge of another insurer's decision. In fact, the Board incorporated a provision that specifically allows insurers to ask about an applicant's adverse experiences with other companies, so long as the insurer makes a decision based upon its own underwriting criteria.

Even though the Board's order identifies a justification for the rule as a whole, the majority holds the rule invalid based upon the agency's failure to address a single phrase. I agree with the Austin Court of Appeals, however, that "the reasoned justification requirement was not intended to be applied clause by clause but rather to the rule as a whole." *See Chrysler Motors v. Texas Motor Vehicle Comm'n,* 846 S.W.2d 139, 143 (Tex. App.—Austin 1993, no writ). I believe that the result of the majority opinion will be to require administrative agencies to provide

justification for virtually every word in adopted rules in order to sustain their validity. This would, in effect, "impose a requirement under § [2001.033] for detailed findings of fact and conclusions of law." *Id.* Nothing in the language of section 2001.033 hints that the Legislature intended to impose such an unworkable requirement.

Because I believe that the Board substantially complied with the reasoned justification requirement, I dissent from that portion of the Court's judgment invalidating Rule 1000. I concur in the remainder of the Court's judgment.