TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-01-00215-CV







Patient Advocates of Texas and Allen J. Meril, M.D., Appellants




v.




Texas Workers Compensation Commission; Leonard Riley, Executive Director;

and State of Texas, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 96-03744, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING







 Patient Advocates of Texas and Allen J. Meril, M.D. (collectively "Advocates")
brought suit against the Texas Workers Compensation Commission, Leonard Riley, Executive
Director, and the State of Texas (collectively "the Commission") challenging the validity and
enforcement of a series of rules promulgated by the Commission. After a number of summary
judgment motions were filed by both parties over a period exceeding four years, the trial court
rendered a final judgment denying all of Advocates' claims and granting judgement for the
Commission. Advocates raises six issues in this appeal challenging the Commission's rules on both
procedural and substantive grounds. We will affirm in part and reverse and render in part.

BACKGROUND

 In 1989, the Legislature enacted a new Workers' Compensation Act (hereinafter the
"Act") restructuring the workers' compensation law in Texas. (1) The new Act replaced the old system
that had become increasingly expensive and was suffering from a loss of public confidence. Medical
costs for injured workers within the workers' compensation system began increasing at a much
higher rate than similar costs outside the system. These increases helped cause workers'
compensation insurance premiums to more than double between 1984 and 1988. See Texas
Workers' Compensation Comm'n v. Garcia, 893 S.W.2d 504, 512 (Tex. 1994).

 In response to these mounting costs, the Legislature gave the newly created
Commission sweeping new powers. One of these powers was in the area of medical costs and
reimbursement. See Tex. Lab. Code Ann. § 413.011 (West 1996). (2) Pursuant to that section, the
Legislature directed the Commission to set new guidelines for reimbursements to health-care
providers treating injured workers. Id. § 413.011(a)(1). In so doing, the Legislature assigned the
Commission the daunting task of designing a guideline that provides fair and reasonable
reimbursements, ensures the quality of medical care, and simultaneously achieves effective medical
cost control. Id. § 413.011(b).

 To fulfill this difficult statutory command, the Commission, pursuant to its rule-making authority, enacted Rule 134.201 (the "Guideline"), which sets certain limits on medical fees
that can be charged by health care providers and contains the 1996 Medical Fee Guideline that
constitutes the major part of this dispute. (3) In addition, as part of the medical reimbursement scheme,
the Commission enacted Rules 133.300-.305 (the "Dispute and Audit Rules"), which govern the
dispute resolution and auditing procedures of physicians' bills by insurance carriers. (4)

 Advocates challenges the Guideline's validity on procedural grounds, contending that
the Commission failed to follow proper procedure in promulgating its rule. Advocates also asserts
that the Commission's rules are substantively invalid because the Guideline places an impermissible
ceiling on medical costs. Additionally, Advocates contends that the Dispute and Audit Rules
improperly delegate oversight and dispute resolution powers to private insurance carriers and create
a statute of limitations that is contrary to the Act. Finally, Advocates presents constitutional
challenges that the rules lack a rational basis and violate the principles of due process and equal
protection.


PROCEDURAL CHALLENGE

 In its first issue, Advocates contends that the Guideline is invalid because the
Commission failed to follow the proper rule-making procedures set forth in the Administrative
Procedure Act (the "APA"). Tex. Gov't Code Ann. § 2001.002 (West 1996). (5) Included in
Advocates' argument that the Guideline fails to substantially comply with the procedural rule-making requirements are specific complaints that the Commission: (i) failed to provide a reasoned
justification for the Guideline, id. § 2001.033(1); (ii) failed to republish the Guideline after altering
it, id. § 2001.023(a); (iii) failed to make a copy of the proposed rule available, id. § 2002.014; and
(iv) failed to provide a statement of reasons for adoption of the Guideline, id. § 2001.030. Because
these complaints are interrelated, we will address them together.

 The APA requires that when an administrative agency adopts a rule, it must, at the
same time, state a reasoned justification for the rule. Id. § 2001.033. Thus, the agency must explain
how and why it reached its conclusions, and it must do so in a logical and unambiguous manner. See
National Ass'n of Indep. Insurers v. Texas Dep't of Ins., 925 S.W.2d 667, 669 (Tex. 1996) ("NAII");
Texas Hosp. Ass'n v. Texas Workers' Compensation Comm'n, 911 S.W.2d 884, 886-87 (Tex.
App.--Austin 1995, writ denied). In addition to a reasoned justification, the order adopting the rule
must include a summary of the comments the agency received from interested parties, a restatement
of the rule's factual basis, and the reasons why the agency disagrees with the comments. Tex. Gov't
Code Ann. § 2001.033; NAII, 925 S.W.2d at 669. The APA places an affirmative duty on an agency
to summarize the evidence it considered, state a justification for its decision based on that evidence,
and demonstrate that its justification is reasoned. NAII, 925 S.W.2d at 669.

 If an order does not substantially comply with these requirements, the rule is invalid. 
Tex. Gov't Code Ann. § 2001.035(a) (West 1996). Although the Legislature has amended the APA
with respect to the standard for a reasoned justification, we are required to examine this case under
the standard in effect pre-amendment. (6) Prior to the enactment of the amended APA, this Court
further stated that substantial compliance requires a penetrating analysis of the alternatives to the
proposed rule. See Hosp. Ass'n, 911 S.W.2d at 884. We have also held that an agency's order
substantially complies with the reasoned justification requirement if it accomplishes the legislative
objectives underlying the requirement and comes fairly within the character and scope of each of the
statute's requirements in concise, specific and unambiguous terms. See Methodist Hosps. v.
Industrial Accident Bd., 798 S.W.2d 651, 657-59 (Tex. App.--Austin 1990, writ dism'd w.o.j.). 
Thus, the APA was designed to compel an administrative agency to articulate its reasoning and, in
the process, more thoroughly analyze its rules. See NAII, 925 S.W.2d at 671-72. Requiring an
agency to demonstrate a rational connection between the facts before it and the agency's rule
promotes public accountability and facilitates judicial review. See id. at 669.

 The Commission adopted the Guideline by publishing a preamble to the rule in the
March 22, 1996 issue of the Texas Register. 21 Tex. Reg. 2361-2392 (1996) (codified at 28 Tex.
Admin. Code § 134.201). The Commission explained the contents of the preamble as follows:


As required by the Government Code, § 2001.033(1), the commission's reasoned
justification is set out in this preamble. The reasoned justification is contained
throughout the preamble, including the following portions: the reasons why the new
rule and repeal are necessary; the factual, policy, and legal basis for the rule;
restatement of the factual basis of the rule; a summary of comments received; names
of those who commented and whether the commenters were for or against adoption
of the new rule and repeal; and the reasons why the agency disagrees with some of
the comments, submissions, and proposals.



 In the preamble, the Commission explained that it had studied other states'
reimbursement systems and the guidelines employed across the country. That study found that
Texas's reimbursement system exceeded the national average, and, thus, the Commission enacted
the new Guideline "to move Texas towards a market based system which reimburses based on values
set by the market for procedures . . . ." The Commission then explained in great detail the factual,
policy, and legal rationale behind the Guideline.

 The Commission explained that the Guideline contains, as the primary vehicle for
cost containment, a list of maximum allowable reimbursement codes. As a model for its list, the
Commission relied on a list of similar codes, referred to as CPT codes, published by the American
Medical Association. The Guideline requires that medical care providers use these codes when
submitting reimbursement claims to the workers' compensation insurance carriers. The provider
must select the code that most accurately identifies the services required by a particular patient and
present a bill to the insurance carrier with both the identifying code or codes and the provider's usual
charges for those services. The carrier will then reimburse the provider the lesser of either the usual
charge as billed or the Guideline's maximum allowable reimbursement. Following the nearly five-page explanation of the basis for the Guideline, the Commission listed the persons and groups that
submitted comments concerning its proposed Guideline. The Commission then listed summaries
of the comments received. Following each comment, the Commission provided its response.

 The legislative objective of the reasoned-justification requirement is to give notice
of the factual, policy, and legal bases for the rule, as adopted or construed by the agency, in light of
all the evidence gathered by the agency and submitted by interested parties during the comment
period. Lower Laguna Madre Found., Inc. v. Texas Natural Res. Conservation Comm'n, 4 S.W.3d
419, 427-28 (Tex. App.--Austin 1999, no pet.). In the preamble, the Commission did more than
merely comply with the APA's requirements. The preamble clearly and exhaustively explains the
Commission's reasons for enacting the Guideline. Additionally, the preamble demonstrates that the
Commission considered the comments in full and provided adequate rationale for its decisions. We
therefore conclude that the Commission substantially complied with the reasoned-justification
requirement of the APA.

 Having determined that the Commission complied with the APA's requirement that
an agency provide a reasoned justification for a rule, we now turn to Advocates' remaining
procedural challenges to the Guideline. The APA requires that an agency give at least thirty days'
notice of its intention to adopt a rule before doing so. Tex. Gov't Code Ann. § 2001.023(a). 
Advocates claims that the Commission failed to comply with this provision because it amended the
Guideline after its initial publication and then failed to republish it. (7) If, after initial publication, a
proposed rule is amended so that it affects other persons than those originally put on notice, then the
agency must commence a new notice and comment period. State Bd. of Ins. v. Deffebach, 631
S.W.2d 794, 801 (Tex. App.--Austin 1982, writ ref'd n.r.e). However, after proper notice and
hearing, should the agency amend the proposed rule such that no one other than those previously
given notice would be affected, no further purpose would be served by requiring republication of the
proposed rule. Id.

 In the present case, the Guideline, as originally published, did not contain the section
concerning durable medical equipment that appears in the finalized version. The Commission took
that section from a previously published proposed medical fee guideline applicable to hospitals. (8) 
The crux of Advocates' complaint is that the Guideline was not republished after the durable medical
equipment section was added. Applying Deffebach, we decline to hold that the Commission has
violated the APA by failing to republish the Guideline. The publication of the durable medical
equipment section in the earlier medical fee guideline applicable to hospitals placed the same
persons on notice regarding the same subject matter as did the publication of the current Guideline. 
Furthermore, by amending the Guideline to include the durable medical equipment section after
initial publication, the Commission did not ignore or substantially alter the proposed rule to an extent
that a new or different group of persons were affected. Therefore, we hold that a new period of
notice and comment was not required in this case, nor was it necessary to republish the Guideline.

 Advocates' final procedural challenge is that the Commission failed to make copies
of the Guideline available. The APA allows the omission of otherwise required information from
the Texas Register if production of that information would be expensive or cumbersome and copies
of the omitted material are made available at a specified place. Tex. Gov't Code Ann. § 2002.014. 
The Guideline, which is acknowledged by both parties as being voluminous, was adopted by
reference because the Commission did not republish it along with the preamble. That the
voluminous Guideline was not published does not violate the APA. See id. Further, because the
Commission specifically instructed interested parties that they could obtain copies at the
Commission's place of business, the Commission complied with the APA's procedural directives.
See id. Accordingly, we overrule all of Advocates' procedural challenges to the Guideline.


SUBSTANTIVE CHALLENGE


 Advocates asserts that the Commission exceeded its statutory authority by imposing
a mandatory cap on medical fees. The Commission responds that promulgating the Guideline falls
within the Commission's general delegation of authority to adopt rules necessary for the 
implementation and enforcement of the workers' compensation system. See Tex. Lab. Code Ann.
§ 402.061 (West 1996). In particular, the Commission must establish, by rule, guidelines for fees
charged by physicians treating injured workers. Id. § 413.011(a)(1). In establishing those guidelines,
the Commission must balance the inherently contradictory goals of ensuring participating physicians
receive reasonable compensation while simultaneously maintaining effective cost control. See id.
§ 413.011(b).

 To determine whether an agency rule exceeds statutory authority, we ascertain
whether the rule is in harmony with the general objectives of the statute. International Ins. Agency,
Inc. v. Railroad Comm'n, 893 S.W.2d 204, 207 (Tex. App.--Austin 1995, writ denied). To make
this determination, we must look not only to a particular provision of the Act, but to all applicable
provisions. Id. As in all questions of statutory interpretation, our goal is to determine and give effect
to the Legislature's intent. Albertson's, Inc. v. Sinclair, 984 S.W.2d 958, 960 (Tex. 1999). We
accomplish this task by first looking to the Act's plain and common meaning. Id. We liberally
construe workers' compensation legislation to carry out its evident purpose of compensating injured
workers and their dependents. Id. at 961; Fulton v. Associated Indem. Corp., 46 S.W.3d 364, 370
(Tex. App.--Austin 2001, no pet.).

 Agencies are creatures of statute. Sexton v. Mount Olivet Cemetery Assoc., 720
S.W.2d 129, 137 (Tex. App.--Austin 1986, writ ref'd n.r.e.). As such, agencies lack inherent
authority and may only exercise those powers that are specifically granted to them by statute. Id.;
McDaniel v. Texas Natural Res. Conservation Comm'n, 982 S.W.2d 650, 651 (Tex. App.--Austin
1998, pet. denied). However, agencies also have implied powers to do that which is necessary to
carry out the specific powers delegated, for the Legislature intended a workable and effective
exercise of the powers expressly and specifically granted the agency. See Sexton, 720 S.W.2d at
137-39 (full extent of power specifically granted to agency must be ascertained with due regard for
rule that Legislature intends agency should have, by implication, such authority as may be necessary
to carry out specific powers delegated).

 In this case, Advocates complains that the Commission exceeded its statutory
authority by establishing a mandatory ceiling on medical fees when the plain meaning and intent of
the term "guideline" suggests a voluntary rather than a mandatory ceiling on medical fees. 
According to Advocates, the Guideline should do nothing more than provide a suggestive range of
fees that the Commission considers to be fair and reasonable. In support of this argument, Advocates
notes that the Act does not contain an express provision authorizing the Commission to impose a cap
on fees. Advocates further contends that by establishing a ceiling, the Guideline deprives medical
care providers of their statutory right to receive fair and reasonable value for their services.

 The Commission, on the other hand, insists that there is nothing in the Act that
prohibits a rule that imposes a mandatory cap on medical fees. Indeed, the Commission points to
its mandate of controlling medical costs as strong evidence that the Legislature implicitly delegated
to it the authority to set a ceiling on medical costs. Our review of the entire structure of the Act leads
us to the conclusion that the Commission has this delegated power by implication, if not expressly.

 The Legislature has mandated that the Commission reevaluate its guidelines every
two years.


§ 413.012 Medical Policy and Guideline Updates Required


 The medical policies and fee guidelines shall be reviewed and revised at least
every two years to reflect fair and reasonable fees and to reflect medical treatment or
ranges of treatment that are reasonable or necessary at the time the review and
revision is conducted.



Tex. Lab. Code Ann. § 413.012. This provision suggests that the Guideline may impose mandatory
caps on fees. Recognizing that the Commission might limit the maximum amount of
reimbursements, the Legislature mandated that the Commission regularly review and revise the
Guideline to ensure that the caps do not arbitrarily depress medical fees to an unreasonable level. 
The two-year adjustment mandate ensures that, as costs rise, the workers' compensation health care
delivery system does not suffer as a result of inadequate medical fee reimbursement. In ascertaining
whether the Guideline complies with the general objectives of the Act, we must look to all applicable
provisions of the Act. See International Ins. Agency, 893 S.W.2d at 207. The inclusion of the two-year review provision in the Act provides support for the Commission's position. The Legislature
anticipated that the Commission might cap fees as a way to achieve effective cost control. By
including this provision in the Act, the Legislature ensured that those caps would be periodically
evaluated to ensure that the Commission complied with its other mandate of maintaining fair and
reasonable fees.

 We note, however, that since the Act's enactment in 1989 and the Commission's
promulgation of the initial medical fee guideline in 1991, the Commission has revised the guideline
only once, that being the 1996 Guideline under review. In over a decade since the Legislature
enacted the new workers' compensation statute, the Commission has yet to conduct biennial reviews. 
While this Court is concerned by the fact that the Commission has not yet complied with this section,
that issue is not before us. Advocates presents this case as a facial challenge to the rule. 
Consequently, we are not presented with a record that demonstrates that health care providers are
being unfairly compensated due to the Commission's failure to conduct biennial reviews or that the
quality of medical care within the workers' compensation system has suffered for that reason. In
considering Advocates' substantive challenge, we are asked to answer a narrow question: Does the
Commission have the power to authorize and impose mandatory ceilings on medical care costs in
enacting the 1996 Guideline? After reviewing the statute and the arguments of the parties, we
conclude in the affirmative and accordingly overrule Advocates' substantive challenge.


ENFORCEMENT CHALLENGE

 In its third issue, Advocates challenges the Commission's rules concerning medical
dispute resolution. Advocates complains that the Commission exceeded its statutory authority by
promulgating the Dispute and Audit Rules that delegate auditing powers to private insurance carriers
and impose a statute of limitations on requests for dispute resolution filed with the Commission's
division of medical review. (9) The Commission rejoins that the Act authorizes it to establish a
program for the systematic monitoring of the necessity of treatments and fees charged by physicians,
and that the Dispute and Audit Rules provide the framework for that program. See Tex. Lab. Code
Ann. § 413.013.

 Advocates contends that the Commission's delegation of auditing powers violates
the Act's provisions and case law concerning the delegation of governmental powers to private
entities. See id. § 413.015(b); Texas Boll Weevil Eradication Found., Inc. v. Lewellen, 952 S.W.2d
454 (Tex. 1997). The Legislature has mandated that the Commission provide for the review and
audit of payments by insurance carriers to ensure that health care providers and the insurance
carriers comply with the Guideline. Tex. Lab. Code Ann. § 413.015(b). Advocates argues that,
while the Act provides the authority for the Commission to conduct audits of insurance carriers, the
Legislature did not expressly or implicitly grant the Commission the power to delegate any audit
powers to insurance carriers. Because of this purported delegation by the Commission, Advocates
contends that the Commission has violated health care providers' rights to a contested-case
proceeding and due process because the rules improperly permit insurance carriers to exercise
governmental regulatory powers and impose an affirmative duty on health care providers to comply
with all of the carrier's demands during an audit.

 Advocates asserts that by delegating unfettered auditing powers to private insurance
carriers, the Commission has violated the standards established by the Texas Supreme Court in Boll
Weevil. In that case, the supreme court held that a state function may be delegated to a private entity,
but that delegation must be subject to certain standards. Boll Weevil, 952 S.W.2d at 472. In order
to ascertain whether the delegation is proper, the court listed the following eight factors:



 Are the private delegate's actions subject to meaningful review by a state agency
or other branch of state government?

 Are the persons affected by the private delegate's actions adequately represented
in the decision-making process?

 Is the private delegate's power limited to making rules, or does the delegate also
apply the law to particular individuals?

 Does the private delegate have a pecuniary or other personal interest that may
conflict with his or her public function?

 Is the private delegate empowered to define criminal acts or impose criminal
sanctions?

 Is the delegation narrow in duration, extent, and subject matter? 

 Does the private delegate possess special qualifications or training for the task
delegated to it?

 Has the Legislature provided sufficient standards to guide the private delegate
in its work?




Id. The validity of a delegation does not hinge on any one factor. Id. at 475. Boll Weevil mandates
that we view the Commission's delegation to private insurance carriers narrowly to determine
whether that delegation conforms to the essence of the eight factors. See id.

 The Dispute and Audit Rules permit insurance carriers to retrospectively review all
medical bills submitted. In conducting this review, the carriers may conduct an onsite audit of the
health care provider. The retrospective review and audit allows the insurance carrier to audit the
health care provider for (a) compliance with the Guideline, (b) duplicate billing, (c) billing for
treatment or services unrelated to the compensable injury, (d) accuracy of coding in relation to
medical records and reports, (e) accuracy of medical charges, and (f) unnecessary or unreasonable
treatment or services. The Dispute and Audit Rules also require that, during an onsite audit, the
health care provider must provide the carrier with all notes, reports, test results, narratives, and other
documentation the provider has relating to the claims identified as being the subject of the audit.

 The Commission argues that this delegation complies with the Boll Weevil standards.
The first Boll Weevil factor requires that the insurance carriers' actions in conducting the audits are
subject to meaningful review by the Commission or another branch of state government. The
Commission emphasizes that because parties may obtain final review of a payment decision at a
hearing conducted by the State Office of Administrative Hearings, the delegation complies with the
first Boll Weevil factor. See Tex. Lab. Code Ann. § 413.031(d). The availability of this review
hearing, however, does not demonstrate that the insurance carriers are subject to a review of the
manner in which audits are conducted, how carriers determine which health care providers to audit,
the scope of an audit, or the demands placed on health care providers subject to an audit.

 The second Boll Weevil factor requires that persons affected by the private delegate's
actions are adequately represented in the decision-making process. The Commission asserts that it
has complied with this factor because health care providers may challenge an insurance carrier's
reimbursement decision. However, health care providers must submit to the audit prior to a
challenge before the Commission's medical review division or a hearing by the State Office of
Administrative Hearings. While the provider may have a representative present at the audit and may
attempt to negotiate with the auditor, the provider's representative has no authority to challenge the
scope of the audit or the auditor's decision concerning the disputed claims. The Commission argues
that it provides the affected parties an early opportunity to settle their differences by requiring an exit
interview where the auditor and the provider's representative must discuss and attempt to resolve
the dispute. However, this dispute resolution process appears to be illusory. As a practical matter,
the health care provider has no authority to effect a resolution of the claim. Indeed, the entire audit
process seems to grant all of the power to one of the parties involved, specifically the insurance
carrier.

 The fourth Boll Weevil factor asks whether the private delegate has a pecuniary or
other personal interest that may conflict with its public function. The Commission recognizes that
its delegation of auditing powers to insurance carriers creates a conflict of interest. But the
Commission maintains that since the Commission is the final arbiter of the dispute resolution
process, the conflict does not pose a problem. The Commission acknowledges that private insurance
carriers and health care providers occupy adversarial positions in the workers' compensation system. 
While health care providers are entitled to reasonable reimbursement for treating injured workers,
the insurance carriers' goal is to minimize the amount it pays to providers. This direct conflict of
interest interferes with the insurance carriers' public function which, as espoused by the
Commission, is to establish a program that ensures compliance with the Guideline and furthers the
policies of the workers' compensation system.

 The final Boll Weevil factor clearly applicable to the private delegation is the sixth
factor, which requires that the delegation be narrow in duration, extent, and subject matter. The
Commission asserts that the many requirements it imposes on insurance carriers in conducting audits
sufficiently limits the delegation, thereby complying with the sixth factor. For example, the carrier
must pay half of the disputed claim and provide detailed notice of its choice to conduct an onsite
audit, which includes the name and date of injury of the worker who received treatment, when those
services were rendered, the name of the carrier's representative, and the date of the audit. Certainly,
these requirements provide the health care provider with sufficient notice as to when and where an
audit will occur. But these notice and reimbursement requirements fall far short of any limitation
on the duration of the audit, the extent of the audit, or the subject matter of the audit. These notice
and reimbursement requirements merely affect an individual audit; they fail to address the essence
of the fourth Boll Weevil requirement that the delegation be limited. Aside from these fairly
stringent notice requirements, insurance carriers enjoy broad power to audit health care providers.

 We conclude that the Commission has delegated audit powers to private insurance
carriers without providing sufficient standards to guide carriers in the performance of their delegated
public function. While the Commission has provided for a review of a decision made after an audit
has occurred, it has not established procedures that enable a meaningful review of the insurance
carriers' auditing practices. Additionally, the Commission has granted sweeping power to insurance
carriers and has provided only illusory representation to health care providers. Therefore, because
the Commission has failed to demonstrate that it has complied with the Boll Weevil standards, we
conclude that this is an improper delegation. Accordingly, we hold that the provisions of the Dispute
and Audit Rules delegating auditing powers to private insurance carriers are invalid. We now turn
to Advocates' complaint regarding the imposition of a one-year statute of limitations on dispute
resolution.

 The Dispute and Audit Rules contain the following statute of limitations on parties
seeking medical dispute resolution, "A party shall file a request for medical fee, medical necessity,
or injured employee medical reimbursement dispute resolution with the Division not later than one
year after the date(s) of service in dispute." The primary purpose of a statute of limitations is to
ensure that claims are asserted within a reasonable time, giving the opposing party a fair opportunity
to prepare a defense while evidence is still available. Matthews Constr. Co. v. Rosen, 796 S.W.2d
692, 694 (Tex. 1990). A statute of limitations also ensures that notice of claims is given to adverse
parties in order to prevent fraudulent and stale claims from springing up at great distances of time
and surprising the other party. Hallaway v. Thompson, 226 S.W.2d 816, 820 (Tex. 1950). The
Commission's imposition of time limits for presenting claims complies with the general purpose of
a statue of limitations. Accordingly, we overrule Advocates' issue regarding the imposition of a
statute of limitations.


CONSTITUTIONAL CHALLENGE

 Advocates also brings constitutional challenges to the Commission's rules. 
Advocates contends that the Guideline is constitutionally defective because the manner in which the
Commission established the maximum allowable reimbursement codes is arbitrary and lacks a
rational basis. As we have previously discussed, the Commission promulgated the Guideline as the
means to achieve cost containment because the fee limits established by the 1991 guideline far
exceeded the national average for fair and reasonable fees in a workers' compensation system. The
Guideline reflects the Commission's effort to meet the Act's stated goal of ensuring quality medical
care while achieving cost control. Advocates asserts that any variances of twenty-five percent below
the fee levels established in 1991 demonstrate that the Guideline is arbitrary on its face because the
Commission stated in the preamble that such variances are "statistical outliers." Advocates refers
us to a single code that varies by seventy percent. This code provides an example of a "statistical
outlier." However, one anomaly does not render the entire Guideline invalid due to arbitrariness.

 Advocates also seeks a determination that the Guideline lacks a rational basis because
it attempts to reduce rather than control costs. Advocates contends that the Act requires cost control
and that any attempt to reduce costs exceeds the Commission's authority, thus rendering its actions
unconstitutional. We disagree. The Act grants the authority to achieve cost control. If the
Commission deems a particular fee excessive, it may act to reduce that fee in order to achieve its
goal. We overrule Advocates' first constitutional challenge.

 Advocates claims that the Guideline violates the principle of equal protection 
because it treats anesthesiologists differently than other physicians. The test for impermissible
discrimination is whether the classification causes similarly situated persons to be treated differently
without rational justification. Bullock v. Regular Veterans Ass'n of U.S. Post No. 76, 806 S.W.2d
311, 313 (Tex. App.--Austin 1991, no writ). In this case, the preamble includes a detailed
discussion about the differences between fee calculation for anesthesiologists as opposed to
physicians in other specialties. Due to these differences, the Commission employed a specific data
calculation model designed solely for anesthesiologists. Because the Commission had a rational
basis for its decision and because the Guideline does not impermissibly discriminate between
individual anesthesiologists, we overrule Advocates' equal protection issue.

 Finally, Advocates attacks certain provisions within the Dispute and Audit Rules as
violating constitutional rights to due process and open courts. Because we have declared these
provisions invalid as an improper delegation of authority to private insurance carriers, we need not
address Advocates' final issue. See Tex. R. App. P. 47.1.


CONCLUSION

 For the reasons discussed above, we hold that the Guideline's imposition of caps on
medical fees complies with the Act. We overrule Advocates' challenges to the imposition of a one-year statute of limitations on medical dispute resolution as well as Advocates' constitutional
challenges to the Guideline. However, we hold that the Commission's delegation of sweeping
auditing powers to private insurance carriers is invalid. Accordingly, we reverse the judgment of the
trial court and render judgment that the portions of the Dispute and Audit Rules delegating audit
power to private insurance carriers are void. On all other points, the judgment of the trial court is
affirmed.



 

 Mack Kidd, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed in Part; Reversed and Rendered in Part

Filed: April 25, 2002

Publish

1. The new Act, initially located in articles 8308-1.01 through 8308-11.10 of the Texas
Revised Civil Statutes Annotated, was codified in September 1993 and now appears in the Labor
Code. See Tex. Lab. Code Ann. §§ 401.001-506.002 (West 1996 & Supp. 2002). For convenience,
we refer to the Labor Code.
2. Section 413.011 reads as follows:



 The commission by rule shall establish medical policies and guidelines
relating to:

 
 fees charged or paid for medical services for employees who suffer
compensable injuries, including guidelines relating to payment of fees
for specific medical treatments or services; 

 use of medical services by employees who suffer compensable injuries;
and

 fees charged or paid for providing expert testimony relating to an issue
arising under this subtitle.

 
 Guidelines for medical services fees must be fair and reasonable and
designed to ensure the quality of medical care and to achieve effective
medical cost control. The guidelines may not provide for payment of a fee
in excess of the fee charged for similar treatment of an injured individual of
an equivalent standard of living and paid by that individual or by someone
acting on that individual's behalf. The commission shall consider the
increased security of payment afforded by this subtitle in establishing the fee
guidelines.



Tex. Lab. Code Ann. § 413.011 (West 1996).
3. The Guideline is codified at 28 Texas Administrative Code section 134.201 (1997).
4. The Dispute and Audit Rules are codified at 28 Texas Administrative Code sections
133.301-.305 (2002). The Dispute and Audit Rules have been amended since this action commenced
in the district court. We cite to the version currently in effect, as do the parties.
5. We refer to the version of the APA in effect when the Commission adopted the Guideline.
6. The 76th Legislature amended the APA's reasoned justification requirements. See Act of
Jan. 18, 1999, 76th Leg., R.S., ch. 558, § 2, 1999 Tex. Sess. Law Serv. 9, 3090 (West 1999) (current
version at Tex. Gov't Code Ann. § 2001.039). This revised statute supercedes prior case law;
however, it does not apply to the Guideline which was adopted before January 1, 1998. See id.
7. The Guideline was adopted by reference to an earlier published version of its text in the
Texas Register pursuant to section 2002.014 of the Government Code. Tex. Gov't Code Ann.
§ 2002.014 (West 1996). That section allows the Secretary of State to omit otherwise required
information from the Texas Register if production of that information would be expensive or
cumbersome and copies of the omitted information are made available at a specified place. Id.
8. The medical fee guideline applicable to hospitals was declared invalid by this Court in
Texas Hosp. Ass'n v. Texas Workers' Compensation Comm'n, 911 S.W.2d 884, 886-87 (Tex.
App.--Austin 1995, writ denied) because the Commission failed to provide a reasoned justification
for that rule.
9. The Act requires that the Commission maintain a division of medical review to ensure
compliance with the Commission's rules and to implement the provisions of the Act under the
Commission's policies. Tex. Lab. Code Ann. § 413.002. The division of medical review must also
monitor health care providers, insurance carriers, and workers' compensation claimants. Id.