# Supreme Court of Texas

═══════════════
No. 23-0273
═══════════════

Accident Fund Insurance Company of America
and Texas Cotton Ginners' Trust,

*Petitioners*,

v.

Texas Department of Insurance,
Division of Workers' Compensation,

*Respondent*

═══════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Third District of Texas
═══════════════════════════════════════

*and*

═══════════════
No. 23-0950
═══════════════

Accident Fund General Insurance Company,

*Petitioner*,

v.

Rodrigo Mendiola,

*Respondent*

═══════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Thirteenth District of Texas
═══════════════════════════════════════

JUSTICE YOUNG, joined by Justice Sullivan, concurring in the denial of the petitions for review.

These two petitions—coincidentally filed by two subsidiaries of the same parent company—are unrelated to each other but bear several important similarities. Both raise significant statutory-interpretation questions; both implicate (albeit in different ways) the proper role of administrative agencies as compared to the courts; and both involve issues that this Court may well need to address in a future case. But the most important similarity is that neither petition offers the Court a suitable vehicle to engage in such review now. I therefore concur in the denial of both petitions for review.

The petition process is somewhat opaque, and it is understandably frustrating to receive a denial without explanation—especially after going through the process of full merits briefing, as with one of these cases. But providing such an explanation is typically not feasible. For one thing, the motivations of the members of the Court may well vary or even conflict; for another, our docket is such that investing the time and resources to explain every discretionary determination would undermine the Court's ability to discharge its duties without a concomitant benefit to the bar or the lower courts. But a brief explanation as to these two cases strikes me as warranted. I therefore write separately to explain why the petitions raise significant legal issues and to emphasize that denying review does not suggest that those issues are settled. To the contrary, in a proper future case, I can readily imagine voting to grant a petition.

**I**

The petitions each challenge an aspect of Texas's nearly billion-dollar workers' compensation program. I begin with the broader facial challenge to a rule promulgated under that program, then turn to a challenge to the specific award of benefits to a single claimant.

**A**

In No. 23-0273, the court of appeals rejected a facial challenge to a rule promulgated by the Department of Insurance. *Tex. Dep't Ins. v. Accident Fund Ins. Co.*, No. 03-21-00074-CV, 2023 WL 2286662 (Tex. App.—Austin Feb. 28, 2023). The challenged rule is codified at 28 Tex. Admin. Code § 130.102(d)(1)(D) and governs eligibility for "supplemental income benefits," which provide longer-term support to injured workers—specifically, a fixed income for those with an impairment rating of 15% or greater. *See* Tex. Lab. Code § 408.142(a)(1).

To protect the integrity of the benefits fund and preserve its availability for the deserving, the legislature has established eligibility criteria. As relevant here, the statute requires beneficiaries to provide evidence of "active work search efforts documented by *job applications submitted by the recipient*." *Id.* § 408.1415(a)(3) (emphasis added). The department's implementing rule requires evidence only of "job applications," 28 Tex. Admin. Code § 130.102(d)(1)(D), without any reference to their having been "submitted by the recipient" of the benefits, *see* Tex. Lab. Code § 408.1415(a)(3).

Accident Fund argues that this inconsistency between the statute and the rule is fatal to the latter. At first glance, it is easy to see why. The statutory criteria, including the requirement to produce job

3

applications, clearly limit the universe of potential beneficiaries. For any limitation to matter, it presumably operates to exclude some applicants from benefits that they would receive if the limit did not exist. Applied here, the statute denies benefits to applicants who meet every other requirement but who cannot produce job applications demonstrating their active search for work. Accident Fund argues that by removing the requirement that applications be "submitted by the recipient," the rule has lowered the bar that the legislature set, thus expanding availability for supplemental income benefits beyond what the statute authorizes. According to Accident Fund, removing the submission requirement allows nearly any inquiry (including a call that merely asks if a business is even hiring) to qualify as a job application.

Accident Fund's initial premise is surely correct: a stroke of the department's rulemaking pen cannot nullify any condition that the legislature imposes on the entitlement to benefits. "Given the vast power allocated to governmental agencies in the modern administrative state," our exercise of "judicial oversight . . . represents an important check on government power that might otherwise exist without meaningful limits." *Nat'l Ass'n of Indep. Insurers v. Tex. Dep't of Ins.*, 925 S.W.2d 667, 670 (Tex. 1996). On its face, then, Accident Fund's petition appears to implicate weighty questions for our attention, potentially rising to the level of unauthorized assumption of legislative power by an executive-branch agency.

The nature of Accident Fund's challenge, however, prevents us from reaching the question presented. Where a party brings a *facial* challenge of this sort, it must show that the rule's text is invalid—in this

case, that the rule is inherently incompatible with the enabling statute. *See Tex. Bd. of Chiropractic Exam'rs v. Tex. Med. Ass'n*, 616 S.W.3d 558, 570 (Tex. 2021) (citing Tex. Gov't Code § 2001.038(a)). No arbitrary hoop to clear, this limitation recognizes that "facial challenges threaten to short circuit the democratic process by preventing duly enacted laws from being implemented" legally. *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (citation and internal quotation marks omitted). This logic applies perforce to facial rule challenges: striking down rules *in toto* risks treading on the legislature's and executive's authority to respectively make and enforce the law.

Accident Fund defends its challenge by suggesting that it would violate the statute if actions like merely phoning a business to ask if it is hiring satisfy the statute's "submitted by the recipient" requirement. But neither do such acts clearly fall within the meaning of "job application," a term used in both the statute (§ 408.1415(a)(3)) *and* the rule (§ 130.102(d)(1)(D)). Assuming that it would be an error for the department to approve a claim after such a desultory effort to satisfy the requirement for benefits, would the "submitted by the recipient" requirement be what makes that approval an error? Or would it be an overbroad reading of "job application"? I see no clear articulation of how the rule necessarily requires deviation from what the statute requires—in other words, the parties offer no example of a case that would inexorably yield one result under the statute but another under the rule. At the very least, therefore, this facial challenge to the rule is not one that clearly warrants this Court's further review.

Of course, if the department ever orders an insurer to pay benefits

5

authorized by the rule but forbidden by the statute, that order will be subject to challenge. If the insurer prevails, the resulting precedent would compel the department to follow the statute, which I take to be Accident Fund's real goal in this case. The pending petition, by contrast, involves a theoretical challenge—there may never be any actual case in which the rule's omission of the statutory language *has an effect* that contravenes the statute.

Accordingly, scrutiny of the rule by this Court at this stage would be of relatively little benefit and might do some harm. My vote may have been different if Accident Fund had shown *why* the rule, as drafted, would inescapably violate the statutory mandate—and I would likely vote to grant a petition brought by Accident Fund or any insurer able to show in a specific case that the application of the rule has violated the statutory mandate. If a case like that arises, we can resolve it on a good record; if one never comes, then it would confirm the wisdom of declining to take it on as a facial challenge.

**B**

Accident Fund's other petition *does* challenge a specific award of benefits, but denial of the petition is again appropriate. In No. 23-0950, *Accident Fund General Insurance Co. v. Mendiola*, Accident Fund challenges an award of "lifetime income benefits" to Rodrigo Mendiola. Mendiola claimed benefits after asphalt from a truck he was driving spilled into the cabin, resulting in severe burns across the left side of his body. Mendiola's left leg was amputated above the knee, and he required extensive surgeries and skin grafts across his left side. According to expert testimony, these surgeries left Mendiola's left hand "so frozen and

6

so [e]ncased by scar that . . . there [is] *no* function of that hand." No. 13-21-00361-CV, 2023 WL 6631948, at *1 (Tex. App.—Corpus Christi–Edinburg Oct. 12, 2023) (emphasis added). Though Mendiola still has a left hand in the literal sense, it only functions "like a club." *Id.*

In this case, the department initially ruled *against* Mendiola, and it was through litigation that he ultimately prevailed. In challenging the award of benefits as ordered by the district court and affirmed by the court of appeals, Accident Fund raises a serious legal argument: that the lower courts improperly ignored a statute in favor of an older, judge-made standard when determining that Mendiola suffered a loss of his left hand sufficient to trigger his entitlement to benefits.

The standard that the courts below followed comes from this Court's 62-year-old decision in *Travelers Insurance Co. v. Seabolt*, 361 S.W.2d 204 (Tex. 1962). We there defined "total loss of the use of a member" to mean that "such member no longer possesses any substantial utility . . . or [its] condition . . . is such that the workman cannot procure and retain" employment requiring its use. *Id.* at 206. Unsurprisingly, Texas workers' compensation law has changed dramatically in the six decades since *Seabolt*. The statute that *Seabolt* interpreted no longer exists. A new, differently worded provision, enacted in 1993 and codified at Labor Code § 408.161, now governs the award of lifetime benefits. As pertinent to Mendiola's case, the statute mandates payment of benefits for the "loss of one hand at or above the wrist," while clarifying that "the total *and permanent* loss of use of a body part is the loss of that body part." Tex. Lab. Code § 408.161(a)(4), (b) (emphasis added).

The parties heavily debate the import of token citations of *Seabolt*

7

by this Court over the years. But when there is a valid exercise of legislative authority, it is axiomatic that "the more recent statutory enactment prevails over an earlier statute," *City of Dallas v. Mitchell*, 870 S.W.2d 21, 23 (Tex. 1994), which also means that a newer statute supersedes case law interpreting or applying an older statute. These principles create no "conflict." When the judicial branch authoritatively determines the meaning of particular statutory language, the legislature cannot countermand the interpretation—but it can *change the law* by enacting a new statute or amending an existing one. When it does so, the judiciary's duty is to cheerfully apply the text of the new law rather than the judicial gloss on an old law.

All this is to say that, to the extent any court cites a judicial decision like *Seabolt* in derogation of the plain meaning of current and controlling statutory law, it does so erroneously. Without taking any view on whether such an error occurred below, however, I conclude that this case does not provide a good opportunity to examine *Seabolt*'s continuing viability. To see why, consider the purported difference between the standards in *Seabolt* and in § 408.161 as it stands today:

- *Seabolt* provides that "total loss of the use of a member" for benefits purposes may exist in two situations: first, where the member "no longer possesses any substantial utility"; and second, in what the Court referred to as a "broader concept," where loss of the member "prevent[s] the workman from procuring and retaining employment requiring" its use. 361 S.W.2d at 206.

- Today's § 408.161(b) makes no mention of employment, instead

8

requiring proof of "total and permanent loss of use of a body part." Tex. Lab. Code § 408.161(b).

Under *either* standard, Mendiola's injury qualifies for benefits. As the court of appeals described, one result of his injuries is that Mendiola "drops objects, can only use his left hand as one would [use] a club," and "experiences pain after performing tasks" in even this limited way. 2023 WL 6631948, at *5.

In other words, this case provides no useful opportunity to choose between apparently competing standards because they do not compete *in this case.* Whether the inquiry is about "substantial utility," "procuring and retaining employment," or simply "total and permanent loss of use," the facts below clearly show that Mendiola meets the test. As such, the result *here* will be the same regardless of whether *Seabolt* governs, or whether the statutory language governs, or whether *Seabolt* maps closely onto the statute, or whether the current text should be understood in light of rather than in contradistinction of *Seabolt.* The court of appeals rightly affirmed the result, *even if* its reasoning was unsound—a question on which I express no view. This Court's definitive guidance will be better given when we have a case in which the record helps us to refine the meaning of the standard that we will direct the lower courts to follow. This record does the opposite.

The Court therefore properly denies the petition, which raises no other worthwhile grounds for reversal. But as with Accident Fund's first petition, the question raised by this one remains serious. If a future case arises in which the choice between *Seabolt* and the current statutory text *is* outcome-determinative, this Court's selection of the proper standard

would actually matter—and that will be a case in which the Court could properly expend the energy to clarify the law. If no such case ever comes to us, it will mean that the department and the lower courts are already resolving any potential tension.

## II

These cases illustrate that denial of a petition for review does not necessarily reflect disagreement with the petition's legal assertions or suggest that the petition presents matters that are not important to the jurisprudence of the State. The challenge to the department's alleged overbroad reading of "job applications" adequate to warrant supplemental income benefits would likely merit review, for example, *if* brought to challenge a specific award or *if* brought in the context of a showing that the rule would clearly mandate unlawful awards. Administrative agencies in Texas have seemingly never enjoyed the deference once endorsed by the U.S. Supreme Court, *see Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), although our cases have occasionally hinted that "the analysis in which we engage is similar," *R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 625 (Tex. 2011). If ever there were a time to transform similarity into sameness (a doubtful proposition all along in this context), it is certainly not now, when the Supreme Court has decidedly abandoned *Chevron* as "fundamentally misguided." *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 407 (2024). In a future case challenging a specific award of supplemental income benefits, then, this Court could (and should) assess critically an agency's power to rewrite, under the guise of interpretation, the statutory criteria that limit benefits awards.

10

The same is true of the trial court's use of the *Seabolt* standard in the second petition. Here, the waters are not clouded by agency authority—the alleged error is one of pure judicial decision-making. Where judge-made law, even judge-made law from the State's highest court, is superseded by valid legislation that adopts a different standard, the judicial task is clear: applying the plain text of the new law as chosen by the People's legislative representatives. Reflexively citing an old standard may reflect commendable respect for *stare decisis*, a respect duly noted by the court of appeals in *Mendiola*. But *stare decisis* itself *requires* that a precedent yield when it has been "superseded" by "higher authority," which includes "an applicable legislative . . . provision." *Mitschke v. Borromeo*, 645 S.W.3d 251, 256–57 (Tex. 2022). Because Mendiola wins either way, the question presented turns out to be abstract. If the courts are in fact misidentifying or misapplying the binding law of the State in material ways, then a future challenge under § 408.161 may well warrant review. If no petition alleging such conflict ever comes, then perhaps *Seabolt* and the current statute are not actually at odds after all.

\* \* \*

For the foregoing reasons, I respectfully concur in the denial of the petitions for review, even as I acknowledge the potentially significant issues that the petitions raise.

Evan A. Young
Justice

**OPINION FILED:** February 7, 2025

11