LOWER LAGUNA MADRE FOUN-
DATION, INC. and Walter A.
Kittelberger, Appellants,

v.

TEXAS NATURAL RESOURCE CON-
SERVATION COMMISSION and The
Loma Alta Trust, Appellees.

No. 03–98–00509–CV.

Court of Appeals of Texas,
Austin.

Oct. 21, 1999.

Richard W. Lowerre, Henry, Lowerre, Johnson, Hess & Frederick, Austin, for Appellant.

John Cornyn, Atty. Gen., Amanda Atkinson Cagle, Asst. Atty. Gen., Austin, for TNRCC.

Edmond R. McCarthy, Jr., McGinnis, Lochridge & Kilgore, L.L.P., Austin, for The Loma Alta Trust.

Before Chief Justice ABOUSSIE, Justices KIDD and B.A. SMITH.

BEA ANN SMITH, Justice.

The Lower Laguna Madre Foundation ("the Foundation")[1] and Walter Kittelberger[2] appeal the district court's grant of summary judgment in favor of the Texas Natural Resource Conservation Commission ("the Commission") and the Loma Alta Trust ("Loma Alta"). This appeal presents four issues: (1) whether section 321.272(b)(3) of the Texas Administrative Code ("the rule") creates an exemption for shrimp research facilities; (2) whether the Commission violated section 26.040 of the Texas Water Code by failing to set requirements and conditions for an exempted shrimp research facility and by failing to comply with the "unnecessarily burdensome" requirement;[3] (3) whether the or-

---

1. The Lower Laguna Madre Foundation is a nonprofit organization that assists in the protection and enhancement of the water quality, habitat, and aquatic life in the Laguna Madre Bay.

2. Walter Kittelberger is the chairman of the Lower Laguna Madre Foundation.

3. We refer to section 26.040 of the Texas Water Code as it existed when the exemption rule was adopted on July 18, 1997. Section 26.040 was subsequently amended, but the amendment states that rules adopted pursuant to the former version of the statute may be maintained and amended as if the statute had not changed. *See* Tex. Water Code Ann.

der adopting the rule contains a reasoned justification that substantially complies with the requirements of section 2001.033(1) of the Administrative Procedure Act ("APA");[4] and (4) whether the Commission's failure to provide for an appeal in the exemption rule has prejudiced the Foundation's substantial rights. We will affirm the district court's decision to grant the Commission's motion for summary judgment.[5]

## FACTUAL AND PROCEDURAL BACKGROUND

On September 12, 1997, Loma Alta filed an application requesting authorization to construct and operate a shrimp research facility approximately seventeen miles southeast of San Perlita on the Texas coast, under the exemption requirements provided by sections 321.272(b)(3) in Subchapter O[6] of the Texas Administrative Code. *See* 30 Tex. Admin. Code § 321.272(b)(3) (West 1999). The proposed research project would operate four production ponds, each equipped with different variations of a wastewater treatment system utilizing constructed wetlands systems and settling ponds. On January 30, 1998, the executive director of the Commission sent a letter granting the exemption and including a list of conditions that Loma Alta must satisfy to retain its exempt status.

The Commission's general counsel asked the Commission to review the executive director's grant of exemption to Loma Alta. The Foundation also wanted to challenge Loma Alta's exemption. Having already expressed concerns about the adoption of the exemption rule, the Foundation feared a lack of public input and adequate review of Loma Alta's exemption application and future shrimp facilities receiving research exemptions. On February 24, the Commission informed the Foundation of the April 8 hearing date and invited comments concerning Loma Alta's exemption. The Foundation submitted comments; and at the hearing, the Foundation expressed concerns again about adequate review of exemption applications and ade-

---

§ 26.040, Historical and Statutory Notes (West Supp.1999).

4. Amending the Administrative Procedure Act in the Texas Government Code, the 76th Legislature added § 2001.039 to enable court oversight of agency compliance without the drastic effect of a court declaring a rule void for having failed to comply with procedural requirements:

> If a court finds that an agency has not substantially complied with one or more procedural requirements of Sections 2001.0225 through 2001.034, the court may remand the rule, or a portion of the rule, to the agency and, if it does so remand, shall provide a reasonable time for the agency to either revise or readopt the rule through established procedure. During the remand period, the rule shall remain effective unless the court finds good cause to invalidate the rule or a portion of the rule, effective as of the date of the court's order.

Act of Jun. 18, 1999, 76th Leg., R.S., ch. 558, sec. 4, 1999 Tex. Sess. Law Serv. 9, 3090 (West) (to be codified at Tex. Gov't Code § 2001.039).

This amendment modifies rule-making procedures and judicial review of rules. It reverses recent holdings of the Texas Supreme Court and of this Court. *See National Ass'n of Indep. Insurers v. Texas Dep't of Ins.*, 925 S.W.2d 667 (Tex.1996); *Texas Hosp. Ass'n v. Texas Workers' Comp. Comm'n*, 911 S.W.2d 884 (Tex.App.—Austin 1995, writ denied). One major purpose of the bill appears to be reducing the frequency and impact of procedural challenges to adopted rules.

Section eight of this same act, however, states that the act only applies to rules adopted on or after January 1, 1998, and challenged in a court action brought after September 1, 1999. Act of Jun. 18, 1999, 76th Leg., R.S., ch. 558, sec. 8, 1999 Tex. Sess. Law Serv. 9, 3091 (West). Because § 321.272 was adopted in 1997, this amendment does not apply in this case.

5. In a letter to this Court, Loma Alta stated that it fully supports the position and arguments presented by the Commission in this matter. When referring to arguments presented by the appellees, we will refer to both appellees as the Commission.

6. Subchapter O, entitled "Discharges from Aquaculture Production Facilities," encompasses sections 321.271–321.280. *See* 30 Tex. Admin. Code §§ 321.271–.280 (West 1999).

quate regulation of exempt shrimp research facilities.

When the exemption rule was originally proposed in January 1997, the Foundation's counsel expressed concerns about the ramifications of granting exemptions to shrimp facilities. The rule, as originally proposed, exempted all shrimp facilities that discharge fewer than thirty days per year, at a rate that does not exceed five million gallons on any single day. *See* 22 Tex. Reg. 889 (1997) (to be codified at 30 Tex. Admin. Code § 321.272) (proposed January 21, 1997). After hearing these concerns about the breadth of this exemption, the Commission narrowed the rule to exempt only shrimp *research* facilities.

During both the public hearing on the proposed exemption rule and during the hearing about Loma Alta's exemption, the Foundation expressed its fear of the dangers to native shrimp from the introduction of non-native species. Most commercial shrimp facilities stock non-native species because they are easier to grow and manage in aquaculture[7] environments. The Foundation predicted that without adequate regulation shrimp facilities would accidentally release more non-native species of shrimp into Texas waters. Non-native species dominate native species, eventually leaving native populations of shrimp with no habitation, which causes them to die. Non-native shrimp also carry diseases to which native shrimp are particularly susceptible. The Commission heard the Foundation's concerns about the possible dangers of inadequate regulation of shrimp facilities. In response, the Commission narrowed the rule to exempt only shrimp research facilities, citing the public demand for more shrimp research.

The Commission reassured the Foundation at the public hearing on the adoption of the exemption rule that it was exempting shrimp research facilities from the per-

mitting process but not from other regulations designed to help prevent the risk of accidental release of non-native species and their diseases. The Commission emphasized that an exempt research facility must still satisfy conditions and requirements set out in the exemption rule. *See id.* § 321.272. Those conditions and requirements include constructing and managing facilities to protect water quality of surface and ground water; complying with the waste disposal requirements of section 321.275; and notifying the executive director of any changes in the control or ownership of the facility, change or addition in the aquatic species produced, increase in the number of production ponds, or expansion of existing ponds. *See id.* §§ 321.272(f), .272(h), .275. After hearing public comments, the Commission exercised its statutory discretion to fashion this exemption policy.

The Commission reviewed Loma Alta's application to determine whether the facility met the requirements stated in the rule and whether the proposed project would be a legitimate research facility. The Commission stressed that it would not judge the quality of the research, yet the public demand and need for such research would weigh in favor of legitimacy.

After considering the comments presented by Loma Alta and by the Foundation at the April 8 hearing, the Commission affirmed the executive director's decision to grant Loma Alta's exemption. The Foundation, relying on some of the same policy arguments it presented in opposing the exemption rule, challenged the Commission's decision regarding Loma Alta in district court. Both the Foundation and Commission filed cross-motions for summary judgment. The district court granted the Commission's motion for summary judgment and denied the Foundation's motion. The Foundation now brings this appeal.

---

7. Aquaculture can be broadly defined as the "business of producing and selling cultured species raised in private facilities." Tex.

Agric. Code § 134.001(3) (West 1982 & Supp.1999).

## DISCUSSION

When both parties move for summary judgment and the trial court grants one motion and denies the other, we must review all summary judgment evidence and determine all questions presented. *See Commissioners Court of Titus County v. Agan,* 940 S.W.2d 77, 81 (Tex.1997). We now address the four issues raised by the Foundation on appeal.

### Section 321.272 Creates an Exemption

■ A plain reading of the rule reveals how inartfully it was drafted. Section 321.272(b)(3) reads as follows:

. . .

(b) An aquaculture facility that discharges within the coastal zone . . . must obtain an individual wastewater discharge permit . . . if the facility contains, grows, or holds aquatic species as described in any of the following three categories:

. . .

(3) Shrimp species in ponds, raceways, or other similar structures at:

(A) a shrimp research facility that discharges less than 30 days per year but at a flow rate that exceeds five million gallons on any single day of discharge or

(B) any other shrimp aquaculture facility regardless of production or discharge quantity.

30 Tex. Admin. Code § 321.272(b)(3)(A), (B). Part (B) could be read to directly contradict (A) if (B) is understood to cover *all* shrimp facilities, including research facilities. The Foundation argues that this inclusive reading of (B) makes (A) a nullity and therefore the rule creates no exemption.

■ When a court is confronted with a question of statutory construction, it must first determine whether the statute is ambiguous. *See Cail v. Serv. Motors, Inc.,*

660 S.W.2d 814, 815 (Tex.1983); *see also Unisys Corp. v. Texas Life, Acc., Health & Hosp. Serv. Ins. Guar. Ass'n,* 943 S.W.2d 133, 140 (Tex.App.—Austin 1997, writ denied). We apply the same rules of statutory construction to the interpretation of rules. *See* Tex. Gov't Code Ann. § 311.002 (West 1988). When one section of a rule directly conflicts with another, the rule is ambiguous, and the reviewing court must consult statutory construction rules and related legislative history to resolve this ambiguity. *See City of Wilmer v. Laidlaw Waste Sys. (Dallas), Inc.,* 890 S.W.2d 459, 465 (Tex.App.—Dallas 1994), *aff'd,* 904 S.W.2d 656 (Tex.1995). The primary rule of statutory interpretation is that a court must look for and give effect to the intent of the Legislature. *See Ex parte Matthews,* 933 S.W.2d 134, 137 (Tex.Crim.App. 1996). To ascertain legislative intent, a court examines the rule as a whole, not isolated provisions. *See Morrison v. Chan,* 699 S.W.2d 205, 208 (Tex.1985). The appellate court reviews the act as a whole and will give effect to all words in a rule to avoid treating any language as surplusage. *See Chevron Corp. v. Redmon,* 745 S.W.2d 314, 316 (Tex.1987); *Wilmer,* 890 S.W.2d at 465; *Nguyen v. State,* 977 S.W.2d 450, 455 (Tex.App.—Austin 1998), *aff'd,* 1 S.W.3d 694 (Tex.Crim.App. 1999).

We must read the rule as a whole and consider the hearing that addressed the exemption process and the amendment that narrowed the exemption from all shrimp facilities to only research facilities.[8] Doing this, we are able to reconcile (A) with (B) by reading (A) to hold that those *research* facilities that do not exceed five million gallons per day and do not discharge more than thirty days per year are exempt from the individual permit requirement. We reject appellants' construction of the rule and overrule the first issue.

### Rule–Making Authority

■ The Water Code grants the Commission some discretion in regulating cer-

8. A limitation urged by appellants.

tain waste discharges by rule rather than by permit:

### Section 26.040. Control of Certain Water Discharges by Rule

Whenever the Commission determines that ... the general nature of a particular type of activity which produces a waste discharge is such that requiring individual permits is unnecessarily burdensome both to the waste discharger and the Commission, the Commission *may by rule regulate and set the requirements and conditions for the discharges* of waste.

Tex. Water Code § 26.040 (emphasis added). In its second issue, the Foundation argues that the Commission failed to include specific conditions and requirements regulating the discharges from shrimp research facilities, thereby overstepping its limited discretion and violating the statutory requirements set out in section 26.040. *See id.* The Foundation adds that the Commission overstepped its limited discretion by determining that individual permits would be unnecessarily burdensome for shrimp research facilities and for the Commission. *See id.*

The rule before us requires a research facility to meet a specific discharge limitation in order to qualify for the exemption, and once exempted, the facility must also comport with the requirements set out in sections 321.272(f) and (h). *See id.* §§ 321.272(f), (h). In addition to these requirements set out in the rule, the executive director's letter granting the exemption to Loma Alta specifically requires that Loma Alta: (1) obtain any necessary license or approval relating to the possession of harmful or potentially harmful exotic fish, shellfish, and aquatic plants from the Texas Parks and Wildlife Department; (2) submit an annual report to the Commission of progress and findings relating to the research activities with detailed information about the dimensions of treatment units, wastewater retention times, and location of sampling points as well as a summary of preliminary findings; (3) com-

ply with all applicable provisions and requirements for exempt facilities as described in the rule; and (4) notify the Commission's Water Quality Division in writing within thirty days of any change in control or ownership of facilities, change or addition in aquatic species produced, increase in the number of production ponds, or expansion of existing production ponds. The Commission established sufficient conditions and requirements in the rule to satisfy the regulation requirements of section 26.040.

■ We note that section 26.040 gives the Commission discretion to determine what type of discharges may be regulated by rule. The Commission found the cost of obtaining an individual permit prohibitively large and therefore unnecessarily burdensome for shrimp research facilities. In order to promote further research and in anticipation of more shrimp research exemption applications, the Commission created a permit-by-rule for this select group of shrimp facilities. The Commission did not overstep its discretion in determining that shrimp research facilities will be permitted by rule. We overrule the second issue.

### A Reasoned Justification

■ The Administrative Procedure Act sets out three requirements for an agency order adopting a new rule. *See* Tex. Gov't Code Ann. § 2001.033(1) (West 1999) ("APA"). The first of these three requirements is to provide a "reasoned justification" that *includes:*

(A) a summary of comments received from parties interested in the rule that shows the names of interested groups or associations offering comment on the rule and whether they were for or against its adoption;

(B) a restatement of the rule's factual basis; and

(C) the reasons why the agency disagrees with party submissions and proposals.

Section 2001.033(1)(A)–(C) (emphasis added). In a third issue on appeal, the Foundation argues that the order adopting the exemption rule for shrimp research facilities fails to substantially comply with the APA's reasoned justification requirement.

The legislature, in its most recent session, revised section 2001.033 of the APA to make the standard for reasoned justification less strict.[9] *See* Act of Jun. 18, 1999, 76th Leg., R.S., ch. 558, sec. 2, 1999 Tex. Sess. Law Serv. 9, 3090 (West) (to be codified at Tex. Gov't Code Ann. § 2001.039). This revised statute supercedes recent case law; however, it does not apply to this rule which was adopted before January 1, 1998. *See id.* sec. 8. Although the amendment does not apply, with its remand provisions, we are mindful of the legislature's expression of what it intends by a reasoned justification for a rule.

The cases superceded by the new statute expanded on the statutory requirements for reasoned justification. *See National Ass'n of Indep. Insurers v. Texas Dep't of Ins.*, 925 S.W.2d 667, 669 (Tex. 1996); *Texas Hosp. Ass'n v. Texas Workers' Compensation Comm'n*, 911 S.W.2d 884, 886–87 (Tex.App.—Austin 1995, writ denied); *Railroad Comm'n of Tex. v. ARCO Oil & Gas Co.*, 876 S.W.2d 473, 491–92 (Tex.App.—Austin 1994, writ denied);*Methodist Hosps. of Dallas v. Texas Indus. Accident Bd.*, 798 S.W.2d 651, 657–59 (Tex.App.—Austin 1990, writ dism'd w.o.j.). Following a line of cases from this Court, the supreme court in *National Ass'n of Independent Insurers*

("*NAII*") held that section 2001.033 of the statute requires an agency's order to state a reasoned justification that includes: (1) a summary of comments received from parties interested in the rule, (2) a restatement of the rule's factual basis, and (3) the reasons why the agency disagrees with a party's comments. *See NAII*, 925 S.W.2d at 669. The dissenting opinion in *NAII* presaged the legislature's statutory revision stating that "the result of the majority opinion will be to require administrative agencies to provide justification for virtually every word in adopted rules in order to sustain validity," a result the legislature now intends to avoid with the amended reasoned justification requirement. *Id.* at 671–72.

Before *NAII*, this court in *Railroad Commission of Texas v. ARCO Oil & Gas Co.* emphasized that the legislature, by enacting section 2001.033, intended a focused analysis by the agency of all factual, policy and legal issues to produce a reasoned justification of the rule. *See ARCO*, 876 S.W.2d at 492. Explaining further, this Court added that an order phrased in conclusory terms does not satisfy the APA requirement of a reasoned justification or factual basis for a rule. *See id.* at 494. Following *ARCO*, this Court tightened the requirement in *Texas Hospital Association v. Texas Workers' Compensation Commission* by holding that the Commission should have conducted a "penetrating analysis of the alternatives." *Tex. Hosp. Ass'n*, 911 S.W.2d at 884.

After *ARCO* and *Texas Hospital Association*, this Court in *Methodist Hospitals of*

---

**9.** Section 2. Section 2001.033, Government Code, is amended to read as follows:

Section 2001.033. State Agency Order Adopting Rule.
(a) A state agency order finally adopting a rule must include:
(1) a re~~a~~soned justification *for* [~~of~~] the rule *as adopted consisting solely of* [~~, including~~]:
(A) a summary of comments received from parties interested in the rule that shows the names of interested groups or associations offering comment on the rule and whether they were for or against its adoption;
(B) a *summary* [~~restatement~~] of the [~~rule's~~] factual basis *for the rule as adopted which demonstrates a rational connection between the factual basis for the rule and the rule as adopted;* and
(C) the reasons why the agency disagrees with party submissions and proposals.
Act of Jun. 18, 1999, 76th Leg., R.S., ch. 558, sec. 2, 1999 Tex. Sess. Law Serv. 9, 3090 (West) (to be codified at Tex. Gov't Code Ann. § 2001.039) (emphasis added).

*Dallas v. Texas Industrial Accident Board* added an additional layer of analysis to the reasoned-justification requirement stating that an order's reasoned justification must substantially comply with the statute by (1) accomplishing the legislative objectives underlying the requirement and (2) coming fairly within the character and scope of each of the statute's requirements in specific and unambiguous terms. *See Methodist Hosps.,* 798 S.W.2d at 657–59. Elaborating on these requirements set out in *Methodist Hospitals,* the supreme court in *NAII* stated that "[p]rovisions like section 2001.033 are designed to compel an administrative agency to articulate its reasoning and, in the process, more thoroughly analyze its rules." *See NAII,* 925 S.W.2d at 671–72. Requiring an agency to demonstrate a rational connection between the facts before it and the agency's rule promotes public accountability and facilitates judicial review. *See id.* at 669.

Even under the strict requirements for reasoned justification, this rule passes the test. The Commission wanted to encourage beneficial shrimp research projects because of a growing need for research on aquaculture wastewater treatment. The exemption gave the Commission a vehicle to encourage and obtain that research by eliminating the prohibitively expensive process of obtaining an individual permit. In response to comments about the rule, the Commission did more than mimic statutory language. The Commission's answers to comments, contained in the adoption order, provided reasoned explanations for the Commission's decision to allow exemptions for shrimp research facilities:

(a) One group expressed concern that a shrimp farm could begin operation without a permit by claiming the lower level of discharge initially and then exceeding such thresholds after obtaining an exemption. *See* 22 Tex. Reg. 6734, 6739 (1997) (codified at 30 Tex. Admin. Code §§ 321.271–280). The Commission responded that not only would it require all commercial coastal shrimp farms to obtain an individual permit, it would also require facilities to first obtain a permit before expanding. *See* 22 Tex. Reg. 6739.

(b) Several groups suggested there is no need to rush the adoption of new rules. In response, the Commission explained that it awaited the conclusion of the 75th Legislature in order to ensure that new rules did not conflict with new legislation. The exemption rule in section 321.272 complements the recommendations of a 1996 senate subcommittee that studied aquaculture issues. This rule has been in development since 1993, and the Commission felt that it was not rushing the promulgation of the rule. Furthermore, the adopted rule replaces one proposed in April 1996 that was withdrawn, largely in response to concerns from interested groups. After considering the concerns, the Commission revised the rule. *See id.* at 6735.

(c) Another group recommended that rule-making not proceed until further aquaculture studies could be conducted on the effect the industry has on the Texas coastline. The Commission agreed that further studies could provide a more informed basis from which to derive a rule; however, the Commission also felt that some rule was needed initially to create a regulatory framework until such studies could be completed to avoid shutting down multiple facilities that lacked a permit. *See id.* at 6735–36.

(d) One interested party suggested that an exemption should be created to allow for beneficial research not directly designed for commercial production. The research projects could contribute valuable knowledge on waste minimization and waste-treatment techniques. The Commission responded by limiting the exemption to shrimp facilities that conduct research only. Research facilities will help generate important information on coastal water quality and the impact of commercial shrimping facilities. *See id.* at 6736.

(e) Another group expressed support of the rule and believed that such research

would increase protection of fish and wildlife because the research would provide specific information about wastewater discharges and the impact the aquaculture industry has on fish and wildlife resources. *See id.* at 6737.

(f) A few groups expressed concern that the exemption rule would result in an authorized exemption with no public input or hearings. While the rule requires no public notice for exempt facilities, the Commission has determined that this category of discharges poses insignificant potential impact on the environment. Additionally, the development of an extensive review process for exempt facilities poses a heavy burden on both the Commission and the entity seeking to discharge. *See id.* at 6736.

(g) Some groups argued that aquaculture facilities should be regulated based on discharge quantity and quality and not on production rate because production rate is not a good measure of quantity or quality of discharge. The Commission explained that the rules and regulations were developed to be consistent with those developed by the EPA; therefore the Commission will continue to develop individual permits based on discharge quantity and quality in order to maintain state and federal consistency. *See id.* at 6739.

(h) Others wanted any registrations or exemptions to be effective for a limited term in order that the regulatory scheme could be shaped by new information about this growing industry. The Commission noted that the rule may be amended if additional controls or requirements are warranted in the future and that aquaculture facilities will not be "grand-fathered." *See id.* at 6739. In the case before us, the Commission limited Loma Alta's exemption to two years.

(i) Another suggestion was that the rule specify requirements for site location in order to minimize adverse impacts to the coast. For instance, the applicant could describe the site-selection process and reasons for deciding to select one site over another. The process could involve local government and resource agencies. One group even suggested that the rule include site-selection criteria that evaluate characteristics of the aquatic resources and of the ability of the receiving waters to assimilate adverse impacts. Some groups recommended criteria that set standards for receiving water conditions, effluent quality, and specific pollutants. The Commission explained that the rule does not specify site criteria; however, the rule does require individual permits for larger facilities and for all commercial shrimp operations in the coastal zone. The permit process includes site-specific application reviews, and the Commission receives input on applications from the Texas Parks and Wildlife Department. The Commission, in section 321.272, did establish more stringent criteria for individual permits based on the location of a facility and the quality of a receiving water. This rule was developed to provide authorization for discharges from aquaculture facilities categorized as posing a low risk of harm to human health and the environment. Facilities that qualify for authorization are those which may be effectively regulated through general provisions and do not require site-specific considerations. *See id.* at 6740.

(j) Yet another concern was the delegation of too much discretion to the executive director in granting an exemption or imposing a permit or registration on facilities below the rule threshold. The Commission acknowledged significant flexibility over facilities falling below the threshold. However, the flexibility is limited by the participation of the Texas Parks and Wildlife Department in reaching these decisions. Furthermore, the primary criteria established in sections 321.272(b) and (c) allow no discretion. *See id.* at 6740.

The legislative objective of the reasoned-justification requirement is to give notice of the factual, policy, and legal bases for the rule, as adopted or construed by the agency, in light of all the evidence gath-

ered by the agency and submitted by interested parties during the comment period. The Commission's responses in this case are not mere reiteration of the statutory language; they explain how and why the Commission reached the conclusions it did. The Commission considered the comments in full and provided adequate rationale for its decisions. We conclude that the Commission substantially complied with the reasoned-justification requirement of the APA and therefore overrule this third issue.

### Failure to Provide for an Appeal

◼ The Water Code allows certain matters to be delegated to the executive director but provides that any person affected by such a delegated action "may appeal the executive director's action to the Commission unless the action is a decision ... specified as final and appealable by the Commission rule that delegates the decision to the executive director." Tex. Water Code Ann. § 5.122(b) (West 1985 & Supp.1999). The exemption rule at issue fails to provide for an appeal to the Commission. If the substantial rights of the appellants have been prejudiced by an agency's error of law, we will reverse and remand the cause to the agency for further proceedings. *See* Tex. Gov't Code Ann. § 2001.174(2)(D) (West 1994 & Supp.1999). The Commission's failure to provide for an appeal in the rule is an error of law. The Foundation requests that the rule be declared invalid because it failed to provide for an appeal as required by section 5.122. Although the failure of the rule to provide for an appeal is an error of law, the Foundation must have suffered a harm due to this omission in order to have a cause of action. To have suffered an actionable harm, substantial rights must have been prejudiced. *See McMullen v. Employees Retirement Sys. of Tex. & Blue Cross and Blue Shield of Tex., Inc.,* 935 S.W.2d 189, 191 (Tex.App.—Austin 1996, writ denied) (citing *Railroad Comm'n v. City of Austin,* 524 S.W.2d 262, 279 (Tex.1975)). The Foundation's substantial rights were not

prejudiced here because, despite the rule's failure to provide for an appeal, the Foundation did receive a review of the executive director's decision by the full Commission. Not only did the Commission review the decision, the Commission also invited the Foundation to submit written comments on the matter and to present oral argument at the April 8 hearing. The Foundation suffered no harm. We therefore overrule this fourth issue.

### CONCLUSION

Upon a review of the summary-judgment evidence and the issues presented, we hold that (1) Loma Alta's proposed research facility falls within the exemption created by section 321.272(b)(3); (2) the Commission provided specific conditions and requirements for Loma Alta's research facility as required by section 26.040 and did not overstep its discretion in determining that individual permits would be unnecessarily burdensome for the shrimp research facilities and for the Commission; (3) the order adopting the exemption rule in section 321.272 substantially complies with the reasoned-justification requirement; and (4) the failure of the rule to provide for review by the Commission did not prejudice the Foundation's substantial rights when the Commission nevertheless conducted such an appeal and permitted the Foundation to participate. We affirm the district court's summary judgment in favor of the Commission.