

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-16-00225-CR
_____

CHRISTOPHER MATTHEW CONWAY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 251st District Court
Randall County, Texas
Trial Court No. 26341C, Honorable Ana Estevez, Presiding

November 21, 2016

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Following a bench trial, appellant Christopher Matthew Conway was found guilty of aggravated assault with a deadly weapon,[1] enhanced.[2] The trial court sentenced him to forty years' confinement in prison and made a deadly weapon finding. Through three

---

[1] TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011).

[2] TEX. PENAL CODE ANN. § 22.02(b) (providing offense is a second degree felony); § 12.42(b) (West Supp. 2016) (providing enhancement of second degree felony to a first degree felony on proof of a prior felony conviction).

issues appellant challenges his conviction. We will overrule each issue and affirm the judgment of the trial court.

Background

The indictment alleged appellant threatened A.S. with imminent bodily injury and used or exhibited a firearm. Evidence showed appellant and A.S. had been romantically involved. One an occasion, appellant came to A.S.'s apartment and found her in the company of a male neighbor. Appellant became angry and left saying he would not bother her again.

But early the next morning he returned, banging on an outside wall and the windows and yelling A.S.'s name. Hoping appellant would not awaken her neighbors, A.S. opened the door and allowed him inside her apartment.

A.S. testified appellant "wasn't himself." She descried him as "very energetic." He had a gun in his hand, which made her "nervous." She was nervous also because appellant had previously told her of an occasion on which he "pistol-whipped" another girlfriend. At A.S.'s request he unloaded the weapon and put the bullets in his pocket. Appellant and A.S. walked outside and appellant smoked a cigarette. They then reentered the apartment and appellant reloaded the gun. He told A.S. he did so because he did not want to lose the bullets.

A.S. recounted in trial testimony that, once back inside the apartment, appellant paced around the living room. He scratched his head with the gun and commented that he could tell A.S. was scared. She agreed she was scared. He then said he wanted her to say he terrified her. She complied. In a recorded jail conversation admitted into

2

evidence at trial, appellant stated that he put a gun to A.S.'s head and threated to "blow her head off."

A.S. went to the bedroom for her cellphone. Appellant told her she could call the police but that doing so would give him ten minutes to do "whatever he needed to do" to A.S. He added if they were inside the apartment when the police arrived "it would turn into a hostage situation." Appellant further stated he was not going back to prison "and would take [A.S.] out with himself." According to A.S., the gun remained in appellant's hand as he spoke.

A.S. further testified that appellant said he did not care if he woke the neighbors and "he would go over there and take care of [the neighbor] too, if he needed to." A.S. testified that her encounter with appellant that morning lasted about four hours. As the event transpired, according to A.S., appellant moved the gun from his hand to the back of his pants to his hand and waived it at himself and A.S. At one stage he pointed it at A.S.'s head and said, "B****, do you think this is a game?"

A.S. finally was able to calm appellant and he left her apartment. As he departed he told her he would watch her "because if he couldn't have [her], nobody would." He added, if he found another man in her apartment he would "blow . . . [their] brains out."

A.S. reported the occurrence to police that afternoon and appellant was arrested. While appellant was held in the county jail A.S. communicated with him by telephone. She agreed on cross-examination that most of these conversations were "friendly" in nature. When asked at trial by the prosecutor why she continued communicating with appellant after his incarceration, A.S. explained she wanted to believe appellant's bad

behavior was drug induced and he could be a good person. A.S. testified she told appellant she would drop the charges if he would leave her alone and not come for her when he was released from prison. In a recorded jail conversation in evidence, appellant related to another female that A.S. sought the promise because she was scared. During November 2015, A.S. ceased all contact with appellant. A county jail corrections officer testified that appellant told her he took a gun to A.S.'s house "because he wanted [A.S.] to know he was serious." The officer also testified that appellant stated he did not mean A.S. any harm.

Analysis

First and Third Issues

In his first issue, appellant argues Texas Penal Code section 22.02(a)(2) is facially unconstitutional because it does not require a culpable mental state and in his third issue he contends Penal Code sections 12.42(b) and 12.46 are facially unconstitutional because they violate the Double Jeopardy Clauses of the United States and Texas Constitutions.

"In a facial challenge to a statute, evidence of how the statute operates in actual practice is irrelevant; courts consider only how the statute is written, not how it operates in practice." *Salinas v. State,* 464 S.W.3d 363, 368 (Tex. Crim. App. 2015). We agree with the State's contention the record shows appellant did not raise in the trial court the constitutional challenges he now urges. A challenge that a statute is facially unconstitutional may not be made for the first time on appeal. *Karenev v. State,* 281

4

S.W.3d 428, 434 (Tex. Crim. App. 2009); TEX. R. APP. P. 33.1(a)(1),(2). Accordingly, nothing is preserved for our review. Appellant's first and third issues are overruled.

Second Issue

In his second issue appellant asserts the evidence was insufficient to prove he intentionally or knowingly threatened to cause A.S. imminent bodily injury and was insufficient to prove A.S. perceived or received the threat.

To determine whether the evidence is sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Brooks v. State,* 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson,* 443 U.S. at 319.

"Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson,* 443 U.S. at 326. Further, circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial

5

evidence alone can be sufficient to establish guilt.  *Hooper,* 214 S.W.3d at 13.  Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State,* 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

Here, the State bore the burden of proving beyond a reasonable doubt that appellant intentionally or knowingly threatened A.S. with imminent bodily injury while using or exhibiting a deadly weapon.  *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2) (West Supp. 2016); 22.02(a)(2) (West 2011).

A.S. was nervous, then scared during her ordeal with appellant. He pointed a loaded gun at her head. As he described his action in the recorded jailhouse call, appellant put the gun to her head and threatened to "blow her head off."  He brandished the gun and said that she could call police but he would have time to do "whatever he needed to do" to A.S., that making the call would lead to a hostage situation, and that he was not going back to prison but "would take [A.S.] out with himself."  Appellant told A.S. he could tell she was scared and she agreed.  Indeed, at his instruction she told him she was terrified.

Whether assault by threat under the Penal Code requires that the victim perceive the defendant's threat is a question that remains open.  *Olivas v. State,* 203 S.W.3d 341, 349 (Tex. Crim. App. 2006); *see also Schmidt v. State,* 232 S.W.3d 66, 67-68 (Tex. Crim. App. 2007); *Boston v. State,* 410 S.W.3d 321, 322 (Tex. Crim. App. 2013) (concerning aggravated robbery, the court discussed but did not resolve the question of whether victim must perceive the threat).  Appellant's actions reflected in the evidence

were taken in the presence of A.S.  If the State was required to prove A.S. perceived appellant's threat, the evidence we have noted was sufficient.

Viewed in the light most favorable to the verdict, the evidence was sufficient to permit the court as trier of fact to find appellant intentionally or knowingly threatened to cause A.S. imminent bodily injury.  If required, the evidence was equally sufficient to establish that A.S. perceived or received appellant's threat to cause her imminent bodily injury.  Appellant's second issue is overruled.

## Conclusion

Having overruled appellant's three issues, we affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.