

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | No. 08-17-00077-CR |
| EX PARTE: | § | |
| | | Appeal from |
| MARCO ANTONIO HINOJOS | § | |
| | | County Criminal Court No. 2 |
| | § | |
| | | of El Paso County, Texas |
| | § | |
| | | (TC # 2017DCV0406) |
| | § | |

## **O P I N I O N**

In this appeal, we face an issue that has percolated through the appellate courts: is the Texas Penal Code provision that criminalizes repeated and harassing electronic communications unconstitutional on its face? That statute specifically provides that a person commits an offense if with the intent to "harass, annoy, alarm, abuse, torment, embarrass . . . another" they send "repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another." TEX.PENAL CODE ANN. § 42.07(a)(7). Given the guidance provided by several decisions from the Texas Court of Criminal Appeals, and our sister courts, we reject the facial constitutional attack that Marco Antonio Hinojos asserts in this case.

### BACKGROUND

Our understanding of the background of this appeal is extremely limited. The appeal arises from a habeas corpus proceeding where Hinojos claims he was indicted under Section 42.07(a)(7)

and restrained of his liberty. The habeas petition alleges that Section 42.07(a)(7) is unconstitutional on its face because it is vague and overbroad. The State's answer to the habeas petition acknowledges that Appellant was indicted under that statute. The actual indictment, or any understanding of the facts leading to the indictment is not in our record.

The trial court denied habeas relief following a hearing that contained only legal argument as to the facial validity of the statute. This appeal follows.

## STANDARD OF REVIEW

Habeas corpus pre-conviction proceedings are separate criminal actions, allowing the applicant the right to an immediate appeal before trial begins. *Greenwell v. Court of Appeals for the Thirteenth Judicial Dist.*, 159 S.W.3d 645, 650 (Tex.Crim.App. 2005). In habeas proceedings, an applicant can assert the unconstitutionality of the statute that he or she is charged under. *Ex parte Weise*, 55 S.W.3d 617, 620 (Tex.Crim.App. 2001).

A statute may be challenged as unconstitutional on its face, or as applied. *Scott v. State*, 322 S.W.3d 662, 665 n.1 (Tex.Crim.App. 2010), *abrogated on other grounds by Wilson v. State*, 448 S.W.3d 418 (Tex.Crim.App. 2014). A statute is unconstitutional on its face when the statute, by its terms, always operates unconstitutionally. *State v. Johnson*, 475 S.W.3d 860, 864 (Tex.Crim.App. 2015); *Gillenwaters v. State,* 205 S.W.3d 534, 536 n.2 (Tex.Crim.App. 2006). A statute is unconstitutional as applied when the circumstances of the defendant's case result in the violation. *Gillenwaters,* 205 S.W.3d at 536 n.3. Hinojos contends Section 42.07(a)(7) is unconstitutional on its face because it is void for vagueness (Issue One) and is facially overbroad (Issue Two).

"A statute may be challenged as unduly vague, in violation of the Due Process Clause of the Fourteenth Amendment, if it does not: (1) give a person of ordinary intelligence a reasonable opportunity to know what is prohibited and (2) establish definite guidelines for law enforcement."

*Scott*, 322 S.W.3d at 665 n.2, *citing Bynum v. State*, 767 S.W.2d 769, 773 (Tex.Crim.App. 1989). When First Amendment freedoms are implicated, the statute must also be sufficiently definite to avoid chilling protected expression. *Grayned v. Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2299, 33 L.E.2d 222 (1972).

"A statute may be challenged as overbroad, in violation of the Free Speech Clause of the First Amendment, if, in addition to proscribing activity that may be constitutionally forbidden, it sweeps within its coverage a substantial amount of expressive activity that is protected by the First Amendment." *Scott*, 322 S.W.3d at 665 n.2, *citing Morehead v. State*, 807 S.W.2d 577, 580 (Tex.Crim.App. 1991). Accordingly, the overbreadth doctrine prohibits the government from "banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 255, 122 S.Ct. 1389, 1404, 152 L.Ed.2d 403 (2002). "The overbreadth doctrine is 'strong medicine' to be employed with hesitation and only as a last resort." *Ex parte Thompson*, 442 S.W.3d 325, 349 (Tex.Crim.App. 2014), *quoting New York v. Ferber*, 458 U.S. 747, 769, 102 S.Ct. 3348, 3361, 73 L.Ed.2d 1113 (1982).

We review the constitutionality of a statute *de novo*. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex.Crim.App. 2013).

## PRIOR CASE LAW

In considering Hinojos's challenge, we do not write on a clean slate, and in fact the prior law in this area largely informs our decision. We briefly recount that history.

### Karenev v. State

Mr. Karenev was convicted under Section 42.07(a)(7) for sending several emails to his ex-wife. *Karenev v. State*, 258 S.W.3d 210, 212 (Tex.App.--Fort Worth 2008), *rev'd*, 281 S.W.3d 428 (Tex.Crim.App. 2009). The Fort Worth Court of Appeals concluded the statute was

3

unconstitutionally vague. 258 S.W.3d at 212. It relied on a series of earlier cases that found prior versions of the harassment statute unconstitutional. Specifically, the Fifth Circuit Court of Appeals had invalidating the 1983 version of the harassment statute, concluding that the statutory standard of whether a communication "alarm[ed]" or annoy[ed]" the recipient was unconstitutionally vague. *Kramer v. Price,* 712 F.2d 174 (5th Cir. 1983), *reh'g en banc granted,* 716 F.2d 284 (5th Cir. 1983), *grant of relief aff'd,* 723 F.2d 1164 (5th Cir. 1984); *see also May v. State,* 765 S.W.2d 438 (Tex.Crim.App. 1989)(following *Kramer*, and concluding "We also hold that the inherent vagueness of the statute as it then existed, in attempting to define what annoys and alarms people, and its failure to specify whose sensitivities are relevant, causes it to be unconstitutionally vague.").

The court of appeals in *Karenev* also looked to *Long v. State* where the Texas Court of Criminal Appeals found the 1993 version of the stalking-harassment statute was similarly unconstitutional. *Long v. State,* 931 S.W.2d 285 (Tex.Crim.App. 1996). To remedy the problems identified in *Kramer*, the legislature had added in the 1993 version the synonyms "harass" "abuse" "torment" and "embarrass" along with the existing terms "annoy" and "alarm." *Id*. at 288. But the Court of Criminal Appeals concluded that none of the 1993 changes remedied the vagueness of the enactment. *Id*. at 289.

Relying on *Kramer* and *Long*, the Fort Worth Court of Appeals in *Karenev* concluded that the newest version of the statute, and the one before us today, was also unconstitutionally vague: "This provision suffers from the same flaws as the old statute: it employs, in the disjunctive, a series of vague terms that are themselves susceptible to uncertainties of meaning." 258 S.W.3d at 216.

While the court of appeals decision in *Karenev* would directly support Hinojos's claim here, that decision was reversed by the Texas Court of Criminal Appeals. *Karenev v. State*, 281

4

S.W.3d 428 (Tex.Crim.App. 2009).  Without addressing the merits of the constitutional claim, the higher court concluded the facial constitutional challenge had not been preserved at trial.  *Id*. at 430.

### Scott v. State

Samuel Scott entered a *nolo contendere* plea to two misdemeanor harassment charges based on his making repeated telephone communications "in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass and offend" the complaining witness.  322 S.W.3d at 665-66.  Assuming the charge could have been based both on Sections 42.07(a)(4) and 42.07(a)(7),[1] the San Antonio Court of Appeals concluded both sections implicated First Amendment rights, and the terms, "annoy, alarm, abuse, torment, embarrass" and "repeated" were unconstitutionally vague.  *Id*. at 667.

The Texas Court of Criminal Appeals reversed.  First, the court concluded that Scott was only charged under Section 42.07(a)(4)(which deals with telephone communications) and not Section 42.07(a)(7)(which deals with electronic communications and is before us today).  *Id*. at 669.  As to Section 42.07(a)(4), the court concluded that the type of communications involved would not involve First Amendment protections.  Instead, the statute only reached communications intended to inflict emotional distress.  That is, the person charged with this offense "will not have the intent to engage in legitimate communication of ideas, opinions, or information."  *Id*. at 670.

---

[1] Section 42.07(a)(4) reads:
> A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person: . . . makes repeated telephone communications . . . in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another.

Section 42.07(a)(7) reads:
> A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person: . . . sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another.

TEX.PENAL CODE ANN. § 42.07(a)(4),(7).

That conclusion was buttressed by the intent element of the statute and the requirement for "repeated telephone calls to the victim; one telephone call will not suffice." *Id.* at 669. The court concluded:

> Given that plain text, we believe that the conduct to which the statutory subsection is susceptible of application will be, in the usual case, essentially noncommunicative, even if the conduct includes spoken words. That is to say, in the usual case, persons whose conduct violates § 42.07(a)(4) will not have an intent to engage in the legitimate communication of ideas, opinions, or information; they will have only the intent to inflict emotional distress for its own sake. To the extent that the statutory subsection is susceptible of application to communicative conduct, it is susceptible of such application only when that communicative conduct is not protected by the First Amendment because, under the circumstances presented, that communicative conduct invades the substantial privacy interests of another (the victim) in an essentially intolerable manner.

*Id.* at 670 [footnotes omitted]. Scott's vagueness challenge thus failed, because once it was divorced from First Amendment implications, he was required to show that it was unduly vague as applied to his own conduct (which he had not done). *Id.* at 671.

Presiding Judge Keller dissented, arguing that the core terms at issue were essentially the same as those in *Long v. State*. *Id.* at 672 (Keller, P.J, dissenting). She concluded the court's definition of the term "repeated" was unsupported by any authority, and the term was still ambiguous. *Id*. at 673. Those portions of the statute addressing "high intensity" emotional states--telephone calls that "harass, abuse, or torment" the victim--were constitutional. *Id.* at 675-76. However, those that addressed the "low intensity" emotion states--"annoy, alarm, embarrass, and offend," were in the Chief Judge's view constitutionally problematic. *Id.* (Keller, P.J., dissenting).

### Wilson v. State

*Wilson* involved a dispute between neighbors. *Wilson v. State*, 448 S.W.3d 418, 420 (Tex.Crim.App. 2014). The defendant had initiated six phone calls within a year period. *Id.* Some of the calls were seemingly innocuous, such as alerting the neighbor to a stray dog or complaining of construction debris. Other calls were less civil. *Id*. at 420-21. The court of appeals reversed

6

the jury's conviction, finding the number of calls did not meet the frequency requirement articulated in *Scott*. *Id.* at 421. The intermediate court also discounted several of the calls because they were made for facially legitimate reasons. *Id.*

The Court of Criminal Appeals, however, affirmed the conviction. In doing so, the high court backed away from its "repeated" language in *Scott*, ultimately concluding that as few as two calls would meet the "repeated" requirement of the statute (but noting such cases would be "exceedingly rare"). *Id*. at 424. A concurring opinion representing the view of three judges stated that the abandonment of the frequency requirement from *Scott* would invite a constitutional vagueness and overbreadth challenge to the statute. *Id*. at 427 (Cochran J, concurring)("I do not think that this is what the Legislature intended, and I do not think that such a position can withstand constitutional scrutiny."). The same three judges dissented from a motion for rehearing that attempted to raise those constitutional challenges. *Id*. at 431 (Cochran J., dissenting on rehearing). The motion for rehearing had apparently claimed that only after the majority opinion modified *Scott* did the constitutional issue arise. *Id*. at 431.

## Subsequent Court of Appeals Opinions

Following *Scott* and *Wilson* several court of appeals decisions have upheld the constitutionality of Section 42.07(a)(7), and the Texas Court of Criminal Appeals has declined to hear the cases. *Lebo v. State*, 474 S.W.3d 402, 405 (Tex.App.--San Antonio 2015, pet. ref'd) (rejecting overbreadth and vagueness challenges); *Ex parte Reece*, No. 11-16-00196-CR, 2016 WL 6998930, at *3 (Tex.App.--Eastland Nov. 30, 2016, pet. ref'd)(mem. op., not designated for publication)(rejecting overbreadth and vagueness challenge); *Blanchard v. State*, No. 03-16-00014-CR, 2016 WL 3144142, at *4 (Tex.App.--Austin June 2, 2016, pet. ref'd)(mem. op., not designated for publication)(rejecting over breath and vagueness challenge); *Duran v. State*, 13-11-00205-CR, 2012 WL 3612507, at *3 (Tex.App.--Corpus Christi Aug. 23, 2012, pet. ref'd)(mem.

op., not designated for publication)(rejecting vagueness challenge). In each of these cases, the courts relied on *Scott*'s conclusion that the statute principally reached only non-expressive conduct and thus unprotected communications.

Notably, the Presiding Judge, joined by Judge Alcala dissented from the denial of the petition for review in *Ex parte Reece*. 517 S.W.3d 108 (Tex.Crim.App. 2017)(Keller, P.J., dissenting). The dissent notes that four judges on the court "indicated that *Wilson*'s retraction of the narrowing language in *Scott* made the *Scott* decision ripe for re-examination." *Id.* at 110. Nonetheless, the court has not granted the petitions in any of the post *Wilson* cases that apply the *Scott* rationale.

## Wagner v. State

And more recently, the Texas Court of Criminal Appeals considered the constitutionality of TEX.PENAL CODE ANN. § 25.07(a)(2)(A) that prohibits an individual from intentionally or knowingly communicating in a "threatening or harassing manner" with another person in violation of a judicially issued protective order or bond condition. *Wagner v. State*, 539 S.W.3d 298, 301 (Tex.Crim.App. 2018). In *Wagner*, the defendant was convicted for communicating with his soon to be ex-spouse in a harassing manner as prohibited by a protective order. The court concluded the statute was not constitutionally overbroad and relied in part on the same reasoning it had used in *Scott*. *Id*. at 311 ("[O]ur reasoning from [*Scott*] leads us to conclude that appellant's overbreadth challenge should be rejected. . . . Here, as in *Scott*, the statute is capable of reaching only conduct that is not entitled to constitutional protection because such conduct will, by definition, invade the substantial privacy interests of the complainant in an essentially intolerable manner.").

## DISCUSSION

At the outset, the State contends that the trial court's decision can be upheld because Hinojos failed to carry his burden to show he was charged under Section 42.07(a)(7). That is, by

8

failing to introduce a certified copy of the charging instrument, Hinojos has failed to show he has standing to challenge the statute. Hinojos, however, filed a sworn habeas petition alleging that he was charged under Section 42.07(a)(7).[2] The State filed an answer that also recited he was charged under that same section.[3] The State did not urge at the hearing that the actual information must be entered as exhibit or that its absence precluded habeas relief. Nor does the State explain why the charging instrument itself is essential to resolving a facial challenge to the statute.

The statute does use several synonyms to express what the defendant must intend, and how the communication must affect the listener. Without the actual charging instrument, we do not know which of the synonyms that Hinojos was accused under. Under some authority, that information might be important to determine if the habeas applicant has standing to assert whether a particular portion of a statute is constitutionally infirm. *See Ex parte Usener*, 391 S.W.2d 735, 736 (Tex.Crim.App. 1965)("[I]t is incumbent upon an accused to show that he was convicted or charged under that portion of the statute the constitutionality of which he questions."). But the court has also permitted a habeas challenge to the portion of a statute the applicant was not charged with. *See Ex parte Lo*, 424 S.W.3d at 13 n.1, 27 (finding prior version of TEX.PENAL CODE ANN. § 33.021(b) unconstitutional even though defendant was charged under § 33.021(b)(1) but not (b)(2)).

While Hinojos mostly focuses on the "offend another" language in the statute, he also asserts his vagueness and overbreadth challenges to each of the operative terms of Subsection (a)(7) -- "harass, annoy, alarm, abuse, torment, embarrass or offend another." Accordingly, given

---

[2] The sworn petition below states: "Applicant is illegally confined and restrained of liberty by the Sheriff of El Paso County, Texas pursuant to a warrant issued for his arrest based upon complaint charging with the violation of harassment under Texas Penal Code 42.07(a)(7)."

[3] The State's answer recites: "The Defendant is charged under Texas Penal Code section 42.07(a)(7) with the offense of Harassment with intent to harass, annoy, alarm, abuse, torment, and embarrass Bertha Portillo, threatening Bertha Portillo by sending repeated electronic communications, in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass or offend Bertha Portillo."

the State's concession in its answer that Hinojos is charged under Section 42.07(a)(7), and because he challenges each of the terms under which he could have been charged, we conclude that he has standing.

On the merits, however, we agree with the State that the statute is not unconstitutional on its face. While acknowledging the well-reasoned writings of the *Karenev* court of appeals decision, and Presiding Judge Keller's several dissents, we are constrained to find Section 42.07(a)(7) on its face is neither overbroad or unduly vague. *Scott* teaches that the type of actionable communicative conduct under a similarly worded subsection is not entitled to constitutional protection.

Within its police powers, the State certainly has the right to protect the "well-being and tranquility of a community." *Kovacs v. Cooper*, 336 U.S. 77, 83, 69 S.Ct. 448, 451, 93 L.Ed. 513 (1949). That police power is of course limited by individual constitutional rights, such as the First Amendment. *Blanco v. State*, 761 S.W.2d 38, 40 (Tex.App.--Houston [14th Dist.] 1988, no pet.). The First Amendment safeguards the "uninhibited marketplace of ideas" and communication of "social, political, esthetic, moral, and other ideas" important to a free society. *Red Lion Broadcasting Co. v. F.C.C.*, 395 U.S. 367, 390, 89 S.Ct. 1794, 1807, 23 L.Ed.2d 371 (1969); *see also Abrams v. United States*, 250 U.S. 616, 630, 40 S.Ct. 17, 63 L.Ed. 1173 (1919)(Holmes, J., dissenting)(hallmark of free speech is to allow "free trade in ideas"--even for ideas that the overwhelming majority of people might find distasteful or discomforting). But in a nation of ordered liberties, the guarantees of free speech are not absolute, and the communication of certain matters are subject to content regulation. *See*, *e.g., Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) (obscenity); *Beauharnais v. Illinois*, 343 U.S. 250, 72 S.Ct. 725, 96 L.Ed. 919 (1952) (defamation). For instance, burning a cross communicates an idea, but the Government can, consistent with the First Amendment, ban cross burning done *with the intent to*

10

*intimidate*. *Virginia v. Black*, 538 U.S. 343, 347, 123 S.Ct. 1536, 1541, 155 L.Ed.2d 535 (2003); *see also Garcia v. State*, 212 S.W.3d 877, 888 (Tex.App.--Austin 2006, no pet.)("[T]hreats and harassment are not entitled to First Amendment protection."); *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 580 (5th Cir. 2005)(stating that there is a "distinction between communication and harassment" and that "courts have the power to enjoin harassing communication"); *Thorne v. Bailey*, 846 F.2d 241, 243 (4th Cir. 1988)("Prohibiting harassment is not prohibiting speech, because harassment is not a protected speech.").

As the *Scott* court concluded, communicative conduct done with the intent to harass, annoy, alarm, abuse, torment, or embarrass another "invades the substantial privacy interests of another (the victim) in an essentially intolerable manner" and thus is not the type of legitimate communication protected by the First Amendment. *Scott*, 322 S.W.3d at 670. And without the First Amendment hitch, Hinojos is required to show the statute as applied to him is impermissibly vague, something he has made no attempt to do.

In his overbreadth challenge, Appellant suggests that the statute would reach a diligent defense attorney who makes repeated case-related calls to a district attorney's office because they might be viewed as offensive to some. Hinojos's brief also suggests the statute does not require the same victim for the "repeated" calls. Thus, an offensive call to Mr. Smith on one day, followed by an offensive call to Mr. Jones the next day triggers the statute. However, even accepting Hinojos's construction of the statute, we do not invalidate a statute for overbreadth merely because it is possible to imagine some unconstitutional applications. *State v. Holcombe*, 145 S.W.3d 246, 250 (Tex.App.--Fort Worth 2004), *aff'd,* 187 S.W.3d 496 (Tex.Crim.App. 2006). Rather, we must first determine if the statute reaches a *substantial* amount of constitutionally protected conduct. *Scott*, 322 S.W.3d at 665 n.2. We analyze the statute for a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the

11

Court." *See Members of City Council of City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 800–01, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772 (1984). Hinojos simply fails to show a realistic threat to a substantial amount of protected conduct. The outlier scenario he suggests would be easily dispensed with in an as applied challenge if the State ever pursued such a case.

More simply put, we cannot say that the statute in banning unprotected communicative conduct threatens a substantial amount of protected speech in relation to its plainly legitimate sweep. We overrule Hinojos's first and second issues and affirm the trial court's denial of habeas relief.

December 19, 2018

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)